Commonwealth *v.* Carey.

COMMONWEALTH *vs.* STEPHEN D. CAREY.

The dying declarations of a person alleged to have been murdered, are admissible in evidence, notwithstanding the twelfth article of the Declaration of Rights that every subject shall have a right to meet the witnesses against him face to face.

A constable cannot, without a warrant, arrest a person guilty of a past offence, unless such offence amounts to felony.

If a person resisting an unlawful arrest takes the life of the party arresting him, he is guilty of manslaughter, but not of murder.

Breaking and entering the ticket-office of a railroad company in the daytime, with an intent to steal therein, but not actually stealing, is, under Rev. Sts. c. 126, § 13, but a misdemeanor; and an arrest by an officer without a warrant for such an offence previously committed, is illegal; and killing the officer by the person so arrested is not murder, but manslaughter.

THIS was an indictment for murder, tried at Cambridge, June 2, 1851, before the chief justice, and *Fletcher* and *Bigelow*, JJ., charging the prisoner with the murder of George

Heywood, at Lincoln, in the county of Middlesex, the 27th day of December, 1850. The evidence for the government established substantially the following facts:

Mr. Heywood, the deceased, was a constable of the town of Lincoln, and keeper of the station-house of the Fitchburg Railroad, in said Lincoln. On the day of the homicide, the prisoner arrived at said station by the up-train, he being the only person who stopped at that place from that train. The station-house is in a part of the town somewhat distant from any dwelling-house, or other building. The conductor of the same train of cars brought a letter to Mr. Heywood from a keeper of another station on the same road, at Waltham, some ten miles distant, between Lincoln and Boston. The following is a copy of the letter: " Waltham Depot, December 27th, 11 o'clock. Mr. Heywood — Dear Sir: — The man that broke into Stony Brook depot last week, I think, has just bought a ticket for Lincoln. If he stops, or any one stops, I would leave the depot as usual, and go away, that he may think you have gone home. But get behind the wall or something, and watch him — do not let him slip. I know it is the one. Yours in great haste. W. A. Blaisdell." Mr. Heywood, after the departure of the train, locked the ticket-office, a small room wholly separated by a partition from the passenger room of the station, and left for his house, about half a mile distant, leaving no one in or about the station except the prisoner, and one of the selectmen of the town, who happened to be unloading wood near by, and who in a few minutes left also. After getting about fifty rods from the station, Mr. Heywood opened and read the letter from Blaisdell, and turned directly back. On the way he met and took along with him a young man of the neighborhood. Upon their arrival at the station, they found the prisoner inside the ticket-office, no other person being in or about the building. The testimony of the young man upon this point was as follows:

" On the 7th of December last, at noon, I was coming from school; went past the depot a few steps; met Mr. Heywood, and proceeded to the depot with him, at his request; when we got there, looked in at the front windows and saw a man

in the ticket-office; the door of the depot was shut; we both went in, and as we went in Carey was just coming out of the ticket-office. Mr. Heywood asked him how he came to be in the ticket-office; he said that he found the door open, and, taking a chisel out of his pocket, said that he found it upon the floor; he said that he thought he would look in and see if anything was gone; he also said that, as he went in, the man whom he supposed had broken open the ticket-office went out; I asked him how he came to have the chisel in his pocket; he said he thought he would keep it until some one came in, and then show it to them; Mr. Heywood then told him that he was his prisoner. Carey gave Mr. Heywood the chisel, and then walked towards the door, and Mr. H. told me to help keep him; Mr. Heywood took hold of his colar, and said that he was his prisoner; Carey then demanded of Mr. Heywood to show his authority for arresting him; Mr. Heywood replied that he was a constable, and had a right to keep him; and that he had a document in his pocket from Waltham that told all about him. I told Carey that Mr. Heywood was a constable; Carey then said that he wanted to send for Webster Smith, who could testify as to his previous character. About this period several schoolboys came into the depot; Mr. Heywood got two of them to start after Mr. Smith, whose residence was two miles distant; Carey then said that if Heywood would let him alone, he would behave himself; Mr. Heywood told him he might go and sit down; he went and sat down on a settee; he then in a moment got up again, walked round the room rather fast, and then jumped out of the window, head foremost, carrying the sash with him. There was a mark at the ticket-office door of some weapon put in to force it open; the chisel found upon Carey fitted this mark."

After leaping through the window, Carey ran about two hundred rods in the road and swamps, closely pursued by Heywood and several schoolboys, Carey all the time carrying in his hand a pistol, which he once or twice pointed at his pursuers, but said nothing. He finally made a stand in a meadow near the borders of the woods, and, turning round,

told Heywood, who was within twenty feet of him, to stop and go back, or he would shoot him. Heywood stopped, but refused to go back. Carey took aim and fired. Heywood received the bullet on the left side of the abdomen, of which wound he died after lingering about eighteen hours. There was no evidence that anything was stolen from the ticket-office on the day of the arrest, or that Heywood at any time thought there was.

The dying declarations of Heywood were also put into the case, by which it appeared that when asked by several of his neighbors, just before his death, how he came to his then present situation, he referred them to the aforesaid letter, which he said " would explain all." To the admission of these dying declarations the prisoner's counsel objected, on the ground, mainly, that this species of testimony conflicts with the provision of the bill of rights, that, in criminal prosecutions, the accused has a right to meet the witnesses against him face to face. The objection was overruled, and the testimony admitted. The deceased stated, among other things, in his dying declarations, that money had been stolen from the office on former occasions, and he believed the prisoner was the person who stole it; but he gave no reasons for his belief, nor did he state at any time that he made the arrest upon any other grounds than the letter from Blaisdell, and the breaking and entering the office by the prisoner.

After the evidence was all in, on behalf of the government, *B. F. Butler & B. Dean*, for the defendant, submitted to the court the following propositions, with the authorities, and prayed that they might be passed upon, before opening the defence:

1. The arrest and detention of Carey by Heywood was not warranted by law, because the offence with which he was charged was a misdemeanor only, it being a breaking and entering, which was only a trespass at common law, and is not made felony by statute. Rev. Sts. *c*. 126, § 13, only declares a punishment for an attempt to commit a felony; which is not a felony, unless especially declared so by statute. 1 Hawk. *c*. 25, § 3; *Commonwealth* v. *Macomber*, 3 Mass. 255; *Com-*

monwealth v. *Barlow*, 4 Mass. 439 ; *Commonwealth* v. *Newell*, 7 Mass. 245 ; 1 Russell on Crimes, 44.

2. If the offence with which Heywood charged Carey be a misdemeanor only, Heywood could not legally arrest and detain him therefor ; because, even if he were a constable, he had no power to arrest for any misdemeanor without a warrant, except to stay a breach of the peace, or to prevent the commission of such an offence. A constable and a private person have equal powers to arrest, with the exception that a constable may command aid, and arrest, in cases of felony, on the information of others. 1 Hawk. *c.* 13, §§ 7, 8 ; Chit.. Crim. Law, 20–23 ; 1 Hale P. C. 587 ; 2 Hale P. C. 88–91 ; 1 Russell on Crimes, 601. Our statute is analogous, in reference to justices of the peace. Rev. Sts. *c.* 85, § 24.

3. Where the arrest is not warranted by law, and the person arrested kill the aggressor, it is manslaughter only.

*J. H. Clifford*, (attorney-general,) and *A. W. Farr*, (district attorney,) contended :

1. That, although perhaps not technically a felony according to the common-law definition, still, that the breaking and entering in the present case, with the manifest intent to steal, was such an offence as would justify a constable in making an arrest.

2. That a constable has a right, and it is his duty, to arrest without a warrant, upon reasonable suspicion of felony.

3. That the letter from Blaisdell contained what, to a common mind, unacquainted with legal technicalities, furnished reasonable ground of suspicion that a felony had been committed by the prisoner, and justified the arrest.

The following authorities were cited by the attorney-general : 1 Russell on Crimes, 594 ; *Rex* v. *Hunt*, 1 Moody C. C. 93 ; *Rex* v. *Howarth*, 1 Moody C. C. 207 ; *Rex* v. *Woolmer*, 1 Moody C. C. 334 ; *Rex* v. *Ford*, Russ. & Ry. 329 ; *Beckwith* v. *Philby*, 6 Barn. & Cres. 635 ; *Samuel* v. *Payne*, 1 Doug. 358 ; *Davis* v. *Russell*, 5 Bing. 354 ; *Rohan* v. *Sawin*, 5 Cush. 281 ; and the *St.* of 1804, *c.* 143, declaring breaking and entering with intent, &c., to be a felony ; the same having been reënacted substantially, though with slightly different phrase-

Commonwealth *v.* Carey.

ology, in the revised statutes. *Devoe* v. *Commonwealth*, 3 Met. 316.

SHAW, C. J. then stated that the court were of opinion, and proposed to instruct the jury, that if a prisoner is unlawfully arrested, and if in resisting the arrest, or attempting to escape, he takes the life of the person so arresting him, although the act is not justifiable, and amounts in law to a criminal homicide, yet it is not homicide with malice aforethought, which is necessary to constitute murder, but it will, in contemplation of law, be manslaughter. This was a principle somewhat technical, but yet well established by law; that although in many cases, and even in the present case, if the evidence already offered should remain uncontroverted, the act might be done under such circumstances of deliberate cruelty, as would equal or surpass, in point of atrocity and moral turpitude, many cases recognized as murder; yet the prisoner must be tried by the rules of law, and not by the aggravation of the offence, as tried and tested by another and different standard.

Upon the question of the legality of the arrest, the opinion of the court was, that any person, whether a police-officer or a private person, may lawfully arrest any one guilty of a felny, with a view to bring him before a magistrate, that proceedings may be further taken to bring him to punishment. There was this difference, however, that a private person, who arrests another on a charge of felony, does it at the peril of being able to prove a felony actually committed by the person arrested. But if a constable or other peace-officer arrest a person without a warrant, he is not bound to show in his justification a felony actually committed, to render the arrest lawful; but if he suspects one on his own knowledge of facts, or on facts communicated to him by others, and thereupon he has reasonable ground to believe that the accused has been guilty of felony, the arrest is not unlawful. Nor is it necessary, when a third person makes a complaint to a peace-officer against a person, and gives him in charge to the officer, that the accusation should in terms technically import a felony; but when the language in its popular sense would import such

Commonwealth *v.* Carey.

charge, it is sufficient; as, where one says to a peace-officer, I wish you to take such a person in charge for having in his possession counterfeit bills, the natural import is, that he intends to charge the party accused with having in his posses- sion counterfeit bills, knowing them to be counterfeit, and with an intent to pass the same; without which incidents such possession would be innocent, and import no criminal charge at all.

But the court were further of opinion, that a constable or other peace-officer could not arrest one without a warrant, for a crime proved or suspected, if such crime were not an offence amounting in law to felony. This is the old established rule of the common law, adopted and acted upon in this common- wealth, by which courts of justice are bound to be governed, until altered by the legislature; that anciently there was a broad and marked distinction between felony and misde- meanor, the former being attended at common law with for- feiture of all the offender's goods; that by the statutes of this commonwealth, and especially by the revised statutes, the line of distinction between felonies and misdemeanors was in a great measure obliterated, and in many instances the law re- garded as misdemeanors offences of a greater moral turpitud than many felonies, yet it had not changed the rule in ques tion; though perhaps it might be more wise in the legislature to make the rule in question applicable to offences measured by a different standard of aggravation, as by being punish- able in the state prison, or otherwise.[1]

The court further held, under this rule, and as applicable to this case, that if Mr. Heywood suspected, or had reasonable cause to suspect, and acted on the suspicion, that the person had stolen money, or any other property, from the ticket-office, inasmuch as such stealing would have been larceny, and of course felony, the arrest was lawful, and the homicide com- mitted by the person in attempting to escape would be mur-

---

[1] See the statute passed after this trial, declaring that any crime punish- able by death, or imprisonment in the state prison, shall be considered a felony. *St.* 1852, *c.* 37.

der, and not manslaughter; and that this would be a question of fact for the jury. But, further; that the breaking open of the ticket-office, though with an intent to steal, but without in fact stealing, was a misdemeanor, and not a felony, and the arrest of the prisoner for that offence, or on a suspicion and belief, by a peace-officer, that he had committed that offence, would not be a lawful arrest. It was the breaking of an office in the daytime, and came under the provisions of Rev. Sts. c. 126, § 13. The court remarked that the statute of 1804, c. 143, § 5, which had been cited, had denominated the breaking a shop in the daytime, under certain circumstances, a felonious offence; yet two circumstances rendered that statute inapplicable to the present case. One was, that it was accompanied with the circumstance that such breaking be done when some one is in the house, and putting such person in fear, one of the aggravating circumstances belonging to the offences of burglary and robbery; and the other was, that the statute has been repealed, without the reënactment of any similar provision describing it as felony, but leaving it, as at common law, in the class of misdemeanors. If the deceased, therefore, in the present case, although legally qualified as a peace-officer, understood, suspected, and believed only that the prisoner had broken open the ticket-office, though with an intent to steal, and, acting upon that knowledge, suspicion, or belief, arrested the person without a warrant, it was an unlawful arrest.

In regard to the letter sent by Blaisdell to the deceased, the court were of opinion that it did not charge a felony, so as to make the arrest lawful without a warrant; it did not state or imply that the prisoner had stolen anything from the Stony Brook depot. Breaking open the depot would, of itself, be an offence for which the perpetrator would be liable to a severe punishment, but in character it was a misdemeanor, and not a felony; and, therefore, charging the prisoner with having broken open that depot did not directly, or by implication, charge a felonious offence, for which he could lawfully be arrested without a warrant. It is distinguishable from the case before mentioned, of giving one in charge for having coun-

terfeit notes in his possession, because that charge necessarily implies a guilty knowledge and a guilty purpose, which, if they make the act criminal at all, make it a felonious one. Such were held to be the rules of law under which the court determined that the case must go to the jury.

Upon the announcement of the foregoing rulings, the counsel for the prisoner stated that they were not aware of any testimony which would essentially modify or control the case as it was presented by the evidence submitted on behalf of the government; and they proposed to submit it to the jury under the instructions of the court.

The chief justice then charged the jury in conformity with the foregoing rulings, and they returned a verdict of guilty of manslaughter.