# JOHN BAD ELK *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF SOUTH DAKOTA.

No. 350.    Submitted February 26, 1900. — Decided April 30, 1900.

Three policemen in South Dakota attempted, under verbal orders, to arrest another policeman for an alleged violation of law, when no charge had been formally made against him, and no warrant had issued for his arrest. Those attempting to make the arrest carried arms, and when he refused to go, they tried to oblige him to do so by force. 'He fired and killed one of them.   He was arrested, tried for murder and convicted. The court charged the jury: " The deceased, John Kills Back, had been ordered to arrest the defendant; hence he had a right to go and make the attempt to arrest the defendant.   The defendant had no right to resist him.   It is claimed on the part of the defendant that he made no resistance, and he was willing to go with the officer in the morning. 'I

charge you, of course, that the officer, John Kills Back, had a right to determine for himself.when this man should go to the agency with him. . . . In this connection I desire to say to you, gentlemen of the jury, that the deceased, being an officer of the law, had a right to be armed, and for the purpose of arresting the defendant he would have had the right to show his revolver. He would have had the right to use only so much force as was necessary to take his prisoner, and the fact that he was using no more force than was necessary to take his prisoner would not be sufficient justification for the defendant to shoot him and kill him. The defendant would only be justified in killing the deceased when you should find that the circumstances showed that the deceased had so far forgot his duties as an officer and had gone beyond the force necessary to arrest the defendant, and was about to kill him or to inflict great bodily injury upon him, which was not necessary for the purpose of making the arrest." *Held,* that the court clearly erred in charging that the . policemen had the right to arrest the plaintiff in error and to use such force as was necessary to accomplish the arrest, and that the plaintiff in error had no right to resist it.

At common law, if a party resisted arrest by an officer without warrant, and who had no right to arrest him, and if, in the course of that resistance the officer was killed, the offence of the party resisting arrest would be reduced from what would have been murder, if the officer had had the right to arrest, to manslaughter.

THE case is stated in the opinion.

*Mr. Thomas B. McMartin* and *Mr. S. B. Van Buskirk* for plaintiff in error.

*Mr. Assistant Attorney General Boyd* for defendants in error.

MR. JUSTICE PECKHAM delivered the opinion of the court.

The plaintiff in error was convicted in April, 1899, in the Circuit Court of the United States, in South Dakota, of the murder on March 13, 1899, of John Kills Back at the Pine Ridge Indian Reservation in South Dakota, and sentenced to be hanged. The case is brought here on writ of error to the Circuit Court.

Both the deceased and the plaintiff in error were Indians and policemen, residing on the reservation at the time of the killing.

Upon the trial it appeared that the plaintiff in error, on March 8, 1899, while out of doors, fired a couple of shots from

his gun at or near the place where he resided. Soon after the firing, one Captain Gleason, (who stated that he was what is called an "additional farmer" on the same reservation,) having heard the shots, and meeting the plaintiff in error, asked him if he had done that shooting, and he said that he had; that "he had shot into the air for fun;" to which Gleason responded by saying to him, "Come around to the office in a little while, and we will talk the matter over." Thereupon they separated. As he did not come to the office, Gleason, after waiting several days, gave verbal orders to three of the Indian policemen to go and arrest plaintiff in error at his mother's house near by, and take him to the agency, some twenty-five miles distant. No reason for making the arrest was given, nor any charge made against him. The policemen (one of whom was the deceased) went to the house where the plaintiff in error was stopping, and came back and reported to Gleason that he was not there, and they were then ordered to return and wait for him and to arrest him. They returned to the house, but came back again and reported that the plaintiff in error said that he would go with them to the agency in the morning; that it was too late to go with them that night. Gleason then told them to watch him and see that he did not go away, and in the morning to take him to the Pine Ridge Agency.

The policemen then again went back to the house where plaintiff in error was staying and met him coming towards his mother's place. He went into the house, and one of their number followed him; found him smoking, and told him that they had come to take him to the agency at Pine Ridge. Plaintiff in error refused to go, and the policeman went outside. Another of them then went into the house, and in a few minutes both he and the plaintiff in error came out, and the latter saddled his horse and went over to the house of a friend, and they followed him. It was getting dark when he came back to his mother's house, still followed by them, and while following the plaintiff in error to his house on this last occasion they were joined by others, so that when he went into the house there were four or five men standing about it. In a short

time the plaintiff in error came out, and asked of those outside, "What are you here bothering me for?" The deceased said: "Cousin, you are a policeman, and know what the rules and orders are." To which plaintiff in error replied: "Yes; I know what the rules and orders are, but I told you I would go with you to Pine Ridge in the morning." Then, according to the evidence for the prosecution, the plaintiff in error, without further provocation, shot the deceased, who died within a few minutes.

The policemen had their arms with them when they went up to where the plaintiff in error was at the time the shooting was done.

This is substantially the case made by the prosecution.

There is an entire absence of any evidence of a complaint having been made before any magistrate or officer charging an offence against the plaintiff in error, and there is no proof that he had been guilty of any criminal offence, or that he had even violated any rule or regulation for the government of the Indians on the reservation, or that any warrant had been issued for his arrest. On the contrary, Gleason swears that his orders to arrest plaintiff in error were not in writing, but given orally. Indeed, it does not appear that Gleason had any authority even to entertain a complaint or to issue a warrant in any event.

The plaintiff in error testified in his own behalf, and said that during the day he had been looking after the schools along the creek near the station; that that was his duty as a policeman; that he arrived at his mother's house about half past four in the afternoon, and soon afterwards an Indian named High Eagle came into the house, staid a minute or two, but did not speak, then went out doors, and Lone Bear came in, and said that he was directed to take the plaintiff in error to Pine Ridge to Major Clapp. To which the plaintiff replied: "All right, but my horse is used up, and I shall have to go to my brother's, Harrison White Thunder's, and get another horse." Lone Bear said all right. Then the plaintiff in error started for his brother's, and when he got there found that the horses were out on the range, and when they came in his brother promised to bring one of them down to him. (In this he was corroborated by his

brother, who testified that he brought the horse over about dark.) On his way back to his mother's the plaintiff in error stopped at a friend's and got a Winchester rifle for the purpose, as he said, of shooting prairie chickens. When he went back to his mother's he was there but a short time when the deceased and two or three others came to his house to arrest him, and the plaintiff in error went out, and according to his testimony the following was what occurred: "I asked John Kills Back and High Eagle what they were there bothering me all the while for. John Kills Back said: 'You are a policeman, and know what the rules are.' I said: 'Yes; I know what the rules are, but I told you that I would go to Pine Ridge Agency in the morning.' Then the deceased moved a little forward, and put his hand around as if to reach for his gun. I saw the gun and shot; then I shot twice more, and John Kills Back and High Eagle ran off. John Kills Back fell after he had gone a short distance. I shot because I knew that they (John Kills Back and High Eagle) would shoot me. I saw their revolvers at the time I shot." This was in substance all the evidence.

Counsel for plaintiff in error asked the court to charge as follows:

"From the evidence as it appears in this action, none of the policemen who sought to arrest the defendant in this action prior to the killing of the deceased, John Kills Back, were justified in arresting the defendant, and he had a right to use such force as a reasonably prudent person might do in resisting such arrest by them."

The court denied the request, and counsel excepted.

The court charged the jury, among other things, as follows:

"The deceased, John Kills Back, had been ordered to arrest the defendant; hence he had a right to go and make the attempt to arrest the defendant. The defendant had no right to resist him. It is claimed on the part of the defendant that he made no resistance, and he was willing to go with the officer in the morning. I charge you, of course, that the officer, John Kills Back, had a right to determine for himself when this man should go to the agency with him.

\* \* \* \* \* \* \* \*

"In this connection I desire to say to you, gentlemen of the jury, that the deceased, being an officer of the law, had a right to be armed, and for the purpose of arresting the defendant he would have had the right to show his revolver. He would have had the right to use only so much force as was necessary to take his prisoner, and the fact that he was using no more force than was necessary to take his prisoner would not be sufficient justification for the defendant to shoot him and kill him. The defendant would only be justified in killing the deceased when you should find that the circumstances showed that the deceased had so far forgotten his duties as an officer and had gone beyond the force necessary to arrest defendant, and was about to kill him or to inflict great bodily injury upon him, which was not necessary for the purpose of making the arrest."

This charge was duly excepted to.

We think the court clearly erred in charging that the policeman had the right to arrest the plaintiff in error, and to use such force as was necessary to accomplish the arrest, and that the plaintiff in error had no right to resist it.

The evidence as to the facts immediately preceding the killing was contradictory; the prosecution showing a killing when no active effort was at that very moment made to arrest, and the defendant showing an intended arrest and a determination to take him at that time at all events, and a move made by the deceased towards him with his pistol in sight and a seeming intention to use it against the defendant for the purpose of overcoming all resistance. Under these circumstances the error of the charge was material and prejudicial.

At common law, if a party resisted arrest by an officer without warrant, and who had no right to arrest him, and if in the course of that resistance the officer was killed, the offence of the party resisting arrest would be reduced from what would have been murder, if the officer had had the right to arrest, to manslaughter. What would be murder, if the officer had the right to arrest, might be reduced to manslaughter by the very fact that he had no such right. So an officer, at common law, was not authorized to make an arrest without a warrant, for a mere misdemeanor not committed in his presence. 1 Arch. Crim. Pr.

& Pl. 7th Am. ed. 103, note (1); also page 861 and following pages; 2 Hawk. P. C. 129, sec. 8; 3 Russell on Crimes, 6th ed. 83, 84, 97; 1 Chitty's Crim. L. star page 15; 1 East P. C. c. 5, page 328; *Derecourt* v. *Corbishley*, 5 E. & B. 188; *Fox* v. *Gaunt*, 3 B. & Ad. 798; *Reg.* v. *Chapman*, 12 Cox's Crim. Cas. 4; *Rafferty* v. *The People*, 69 Ill. 111; *S. C.* on a subsequent writ, 72 Ill. 37. If the officer have no right to arrest, the other party might resist the illegal attempt to arrest him, using no more force than was absolutely necessary to repel the assault constituting the attempt to arrest. 1 East, *supra.*

We do not find any statute of the United States or of the State of South Dakota giving any right to these men to arrest an individual without a warrant on a charge of misdemeanor not committed in their presence. Marshals and their deputies have in each State, by virtue of section 788, Revised Statutes of the United States, the same powers in executing the laws of the United States as sheriffs and their deputies in such State may have by law in executing the laws thereof. This certainly does not give any power to an officer at the Pine Ridge Agency to arrest a person without warrant, even though charged with the commission of a misdemeanor. These policemen were not marshals nor deputies of marshals, and the statutes have no application to them.

By section 1014 of the Revised Statutes, the officers of the United States named therein, and certain state officers, may, agreeably to the usual mode of process against offenders in such State, order the arrest of an offender for any crime or offence committed against the United States. This section has no application.

Referring to the laws of South Dakota, we find no authority for making such an arrest without warrant. The law upon the subject of arrests in that State is contained in the Compiled Laws of South Dakota, 1887, section 7139 and the following sections, and it will be seen that the common law is therein substantially enacted. The sections referred to are set out in the margin.[1]

---

[1] Sec. 7139. An arrest may be either—

1. By a peace officer, under a warrant;

No rule or regulation for the government of Indians upon a reservation has been cited, nor have we found any, which prohibits the firing of a gun there, " for fun," nor do we find any law, rule or regulation which authorizes an arrest, without war-

---

2. By a peace officer, without a warrant; or,

3. By a private person.

SEC. 7141. If the offence charged is a felony, the arrest may be made on any day and at any time of the day or night. If it is a misdemeanor, the arrest cannot be made at night, unless upon the direction of the magistrate indorsed upon the warrant.

SEC. 7144. The officer must inform the defendant that he acts under the authority of the warrant, and must also show the warrant if required.

SEC. 7145. If, after notice of intention to arrest the defendant, he either flee or forcibly resist, the officer may use all necessary means to effect the arrest.

SEC. 7148. A peace officer may, without a warrant, arrest a person—

1. For a public offence committed or attempted in his presence.

2. When the person arrested has committed a felony, although not in his presence.

3. When a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it.

4. On a charge made upon reasonable cause of the commission of a felony by the party arrested.

SEC. 7150. He may also at night, without a warrant, arrest any person whom he has reasonable cause for believing to have committed a felony, and is justified in making the arrest, though it afterward appear that the felony had not been committed.

SEC. 7151. When arresting a person without a warrant, the officer must inform him of his authority and the cause of the arrest, except when he is in the actual commission of a public offence, or is pursued immediately after an escape.

SEC. 7153. When a public offence is committed in the presence of a magistrate, he may, by a verbal or written order, command any person to arrest the offender, and may thereupon proceed as if the offender had been brought before him on a warrant of arrest.

SEC. 7154. A private person may arrest another—

1. For a public offence committed or attempted in his presence.

2. When the person arrested has committed a felony, although not in his presence.

3. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it.

SEC. 7155. He must, before making the arrest, inform the person to be arrested of the cause thereof, and require him to submit, except when he is in the actual commission of the offence, or when he is arrested on pursuit immediately after its commission.

rant, of an Indian not charged even with the commission of a misdemeanor, nor does it anywhere appear that Gleason had authority to issue a warrant for an alleged violation of the rules or regulations.

It is plain from this review of the subject that the charge of the court below, that the policemen had the right to arrest this plaintiff in error, without warrant, and that, in order to accomplish such arrest, they had the right to show and use their pistols so far as was necessary for that purpose, and that the plaintiff in error had no right to resist such arrest, was erroneous. That it was a material error, it seems to us, is equally plain. It placed the transaction in a false light before the jury, and denied to the plaintiff in error those rights which he clearly had. The occasion of the trouble originated in Gleason's orders to arrest him, and in the announced intention on the part of the policemen, which they endeavored to accomplish, to arrest the plaintiff in error that night and take him to the agency, and all that followed that announcement ought to be viewed in the light of such proclaimed intention. And yet the charge presented the plaintiff in error to the jury as one having no right to make any resistance to an arrest by these officers, although he had been guilty of no offence, and it gave the jury to understand that the officers, in making the attempt, had the right to use all necessary force to overcome any and all opposition that might be made to the arrest, even to the extent of killing the individual whom they desired to take into their custody. Instead of saying that plaintiff in error had the right to use such force as was absolutely necessary to resist an attempted illegal arrest, the jury were informed that the policemen had the right to use all necessary force to arrest him, and that he had no right to resist. He, of course, had no right to unnecessarily injure, much less to kill, his assailant; but where the officer is killed in the course of the disorder which naturally accompanies an attempted arrest that is resisted, the law looks with very different eyes upon the transaction, when the officer had the right to make the arrest, from what it does if the officer had no such right. What might be murder in the first

case might be nothing more than manslaughter in the other, or the facts might show that no offence had been committed.

The plaintiff in error was undoubtedly prejudiced by this error in the charge, and the judgment of the court below must therefore be

> *Reversed, and the case remanded with instructions to grant a new trial.*