There was evidence on the part of the State tending to show that on the morning of 25 October, 1920, the deceased, a prohibition agent of the Federal Government, with two others, Charles Beck, an assistant deputized for the purpose, and J. M. Welch, a State deputy sheriff, went to the home of the prisoner in Swain County, about seventeen miles south of Bryson City, and found on the immediate premises two barrels of apple pomace in a state of fermentation; that Burnett, *Page 754 
the prisoner, came up and said he was intending to make vinegar out of the pomace. Rose told him it was against the law to make vinegar in that way, as there was alcohol in it, etc. That Rose and Charlie Beck went over to prisoner's orchard and found five other barrels of pomace, and near there found a still place with fresh ashes, showing signs of use "since the rain." Going back to the house they found that Burnett had disappeared, and the visiting party went on to some other places in the neighborhood; that in the afternoon Rose and Charles Beck returned to home of defendant for the purpose of arresting him; that the prisoner at that time was at his crib near the house unloading corn or roughness, and when he saw the deceased and his deputy, the prisoner started to run, was called to several times to halt, but he moved around the barn; that Rose and deputy pursued, both having their pistols out, and as they came in view of prisoner around the barn, the latter (706) fired from a straw stack where he had stopped and killed deceased; that he then ran on and Beck, the deputy, pursued, firing at him seven or eight times till he passed out of sight; that neither the deceased nor his deputy made any demonstration with their pistols till after deceased was shot, but had them in their hands, and Rose's pistol went off as he fell, mortally wounded, apparently without aim.
There were facts in evidence which seemed to permit the inference that Rose may have had a warrant, but none was exhibited at the time of the occurrence. Defendant, a witness in his own behalf, testified he was not engaged in making brandy at the time; that he intended to make some, but some one stole his still, and to keep his fruit from going to waste he has crushed his apples into pomace with the purpose of making vinegar, and did not know he was violating any law in doing this; that he had gone off when the parties went over into his orchard, but not with any purpose of flight, but only to drive his cattle up on the mountain to keep them off his crop, which was not under his fence, and this was his custom; that when he returned, the deceased and Beck and the deputy sheriff had gone somewhere and he ate his dinner and then went to hauling up his corn, and was at the crib unloading it when the deceased and his assistant returned and were coming towards him with their pistols out; that witness went towards and around the barn and the two pursued him with their pistols out and deceased fired one shot at witness, hitting him in the leg; that witness fell over the bars at the end of the barn and got his gun, which had been left near the straw stack in the morning when he had returned from a squirrel hunt; that at time witness fired, deceased was pointing his pistol at witness, and the other man also had a drawn pistol, and witness shot as the only thing he could do to save himself. That witness saw no warrant nor heard any claim of one, and heard no call *Page 755 
to halt, and did not hear either of the men speak during the occurrence; that after witness fired the gun he continued his flight and was shot at several times by Beck until witness passed out of view, when he sat down and washed the blood off and tied up his leg where he had been wounded. The wife of defendant testified that one of the men fired at her husband as he went towards the barn from the crib; that she did not hear them make any call to her husband to halt, but were advancing towards him with their pistols out.
On this, the evidence chiefly pertinent, the cause was submitted to the jury, and defendant, as stated, was convicted of murder in the second degree. While the court, in a clear and comprehensive charge, presented the case in every aspect of the testimony, and in the main correctly, we think there was error to the defendant's prejudice in an instruction that under a Federal statute, commonly known as the Lever Act, it was made a felony to use fruits or food material for the production of distilled spirits for beverage purposes, and that this (707) being true, or if it were true on the facts as accepted by the jury, the deceased was empowered to arrest the prisoner without warrant, the State statute, C. S. 4544, providing that "a sheriff, coroner, constable, police, or other officer entrusted with the care and preservation of the peace may arrest without warrant whenever they know, or have reasonable ground to believe, that a felony has been committed or a dangerous wound given, that a particular person is guilty and may escape if not immediately arrested."
It seems that this Lever Act, constituting the felony as stated, chapter 53, 40 U.S. Statutes at Large, continued to be in force and effect till the spring of 1921, several months after this occurrence. See Hamilton v.Distillery Warehouse Co., 251 U.S. 146; Resolution Congress, 41 Statutes at Large, p. 1359. But if this be conceded, we are of opinion that the instruction of his Honor excepted to cannot be sustained for the reason that the deceased was not charged with the duty of enforcing the Lever Act, nor clothed with the power incident to such enforcement, but was a prohibition officer, charged only with the duties of enforcing the National Prohibition Act, and the Harrison Narcotic Act. Under this statute, chapter 85, 41 U.S. Statutes at Large, part 1, p. 305, sec. 29, the unlawful distillation of spirits for the first offense is only a misdemeanor, and in section 28 the officers charged with the enforcement of the law are given the same powers and protection in making arrests, etc., as that formerly conferred upon them for the enforcement of existent laws relating to the manufacture and sale of liquors under the law of the United States. Referring to the laws in question, Compiled Statutes, p. 220, being chapter 125, section 9, 20 Statutes at Large, p. 341, it will be noted that the power of arrest without *Page 756 
warrant under cases like that presented here was only given when the officer found the person or persons charged in the "act of operating an illicit distillery."
And "then he shall be taken forthwith before some judicial officer and his case investigated."
We are confirmed in this view by the rules and regulations issued by the Internal Revenue Department for the guidance of its officials in enforcement of the Federal laws coming under its supervision and control. These regulations, when approved by the Secretary of the Treasury, and when not unreasonable or in conflict with the statutes appertaining to the subject, are considered as binding, and may be taken note of by the courts. Campbell v. U.S., 95 U.S. 571; S. v. R. R.,141 N.C. 846, and from a perusal of same, Regulations, No. 12, it appears that under the National Prohibition Act, the Federal Prohibition Commissioner is charged with the enforcement of the Federal laws relating to the production, sale, and taxation of spirituous liquors, etc., and also of the Harrison Narcotic Act, and that "the field officers or (708) prohibition agents under him have jurisdiction of same class cases." And in reference to arrests without warrant, the authority is stated as follows:
"Arrests without warrants. — Section 28 of Title II of the National Prohibition Act (see article 4) has the effect of giving prohibition enforcement officers the same authority to arrest illicit distillers without warrants as is conferred by the act of 1879 (see article 270). An officer may also, in most jurisdictions, make an arrest without a warrant whenever he actually witnesses the commission of any offense under the prohibition statute and the arrest is made immediately thereafter. With respect to the procedure after such an arrest is made see below (preliminary hearings). An officer belonging to the Internal Revenue Service should not make arrests, however, except in cases arising under section 26 of the act (see article 54), so long as he is reasonably satisfied that the offender may be found when wanted."
In the case before us it appears from all the testimony that the prisoner at the time of the attempted arrest was at his corn crib on his own premises unloading corn into the crib from his wagon; that he was not engaged at the time in operating a distillery or in making use of fruits or grain in production of distilled spirits, and on these facts, as we understand them, he was not liable to arrest by deceased without a warrant duly issued for the purpose. John Bad Elk v. U.S., 177 U.S. 529; S. v.Bryant, 65 N.C. 327.
In so far as the State statute is concerned, C. S. 4544, that in itself applied, and is clearly intended to apply to peace officers of the State, *Page 757 
and in the enforcement of the State law, and does not affect the conduct or powers of Federal officers unless the principles therein are extended to such officers by a Federal statute, and when in enforcement of a valid Federal law. The only Federal statute called to our attention which purports to do this, Compiled Statutes U.S., 1918, sec. 1312; Revised Statutes U.S., sec. 788, restricts the effect and purpose to U.S. marshals and their deputies, and does not extend or apply to these prohibition agents, charged only, as stated, with enforcement of the prohibition and narcotic acts, and with the powers of arrest as therein given.
It could not be seriously contended that deceased, as a private citizen, could make this arrest because of knowledge that under the Lever Act a felony had been committed. Under our local statutes, C. S. 4543. such a power is restricted to felonies committed in the immediate presence of the person and applies only to the graver felonies, such as murder, rape, and the like. S. v. Bryant, supra. And there is no statute or principle that would extend it to deceased on the facts of this record, from which it appears he was acting and professing to act under a specific Federal statute which expressly defined his powers of arrest without warrant, restricting them to cases where an offender is presently engaged in the commission of the crime. Of a surety he (709) could not have greater rights as a private citizen than the statute gave to him as an officer of the law.
On the facts as now presented, we are of opinion that no right to arrest the prisoner without a warrant has been shown, and for the error in the instruction the prisoner is entitled to a
New trial.
(710)