966 F.2d 1454
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Fenton HALLIBURTON, Defendant-Appellant.
 No. 91-6268.
 United States Court of Appeals, Sixth Circuit.
 June 19, 1992.
 
 Before BOYCE F. MARTIN, JR. and MILBURN, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Fenton Halliburton appeals the district court's order affirming his conviction for assault on a federal court security officer in violation of 18 U.S.C. § 113(d). On appeal, the sole issue is whether defendant's resistance to the unlawful seizure of his person was justifiable and reasonable, thereby constituting a defense to the charge of assault. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On January 16, 1991, at approximately 8:30 a.m., defendant Halliburton entered the United States Courthouse in Nashville, Tennessee. As he entered the building, defendant encountered the Special Deputy United States Marshals who provide security for the courthouse. Defendant was carrying a duffel bag which was so large that it could not pass through the scanning machine. The deputy marshals suggested that defendant leave the duffel bag in their care after he told them he was going to the Internal Revenue Service office ("I.R.S.") in Room 317. Defendant left the duffel bag at the entrance area and entered the courthouse.
 
 
 3
 Defendant had two prior confrontations with private security guards at the courthouse. On one occasion a security guard asked defendant to leave the grounds of the federal building. Defendant complied after protesting that he had a right to stay there because it was public property. On another occasion, a security guard requested for security reasons that defendant leave his duffel bag outside the restroom defendant wished to use. Defendant complied, but complained to the guard's supervisor about the incident.
 
 
 4
 When defendant had not returned for his duffel bag by 10:00 a.m. on January 16, the deputy marshals stationed at the entrance notified Deputy Marshal Burris who began a search for defendant throughout the courthouse. When Burris could not find a Room 317 in the courthouse, he searched the entire courthouse. Burris was unable to locate defendant.
 
 
 5
 Burris then resumed his normal patrol throughout the courthouse. At approximately noon, Burris returned to the front entrance where he observed defendant's unclaimed duffel bag.
 
 
 6
 Burris resumed a search for defendant, starting on the eighth floor of the courthouse. Burris entered the district court clerk's office on the eighth floor and spoke to three members of the clerk's staff. They informed Burris that they had not seen defendant on that day but that he had been in the office approximately two weeks prior to that time. Members of the clerk's staff informed Burris that when defendant had been in the clerk's office on the earlier occasion his back was turned to the counter, and they were unable to see what he was doing. However, a woman who was in the clerk's office on business at that time had a different vantage point than the three staff members. She allegedly informed the staff members that from her vantage point she observed defendant exposing his penis and masturbating.
 
 
 7
 After receiving this information, Burris returned to the first floor and told the marshal on duty, Deputy Bodenhamer, that he wanted to speak with defendant when he returned for his duffel bag. Burris testified that he wanted to ask defendant about the incident in the clerk's office where defendant had allegedly exposed himself.
 
 
 8
 Defendant spent most of the day in an Internal Revenue Service Office on the third floor of the courthouse. He had arrived there at approximately 8:30 a.m. and requested an employment application. This was the second time that defendant had been in that office within a few weeks asking for an application. After defendant was furnished an employment application, he remained in the office working on the application until sometime after noon when a security guard was called.
 
 
 9
 Security guard James Hill responded to the call at the I.R.S. office at approximately 12:20 p.m. and informed defendant that he would have to leave the office in five minutes. Hill testified that as he began to escort defendant out of the courthouse, defendant cursed and shouted profanities at him. According to Hill, defendant was so loud and boisterous that people in the courthouse offices were looking out of their doors to see what was happening.
 
 
 10
 When defendant arrived on the first floor at approximately 12:30 p.m., Deputy Burris met him. Burris was wearing a badge which identified him as a Court Security Officer and a Special Deputy of the United States Marshals Service.
 
 
 11
 When Burris told defendant that he wanted to speak with him, defendant replied, "I'm not talking to anyone." After defendant picked up his duffel bag, Burris again informed him that he wished to talk to him. Defendant again replied that he was not talking to anyone. Officer Burris followed defendant and blocked his way as he tried to exit the building. Office Burris also pointed his finger at defendant's face. Defendant, who weighed between 300 and 350 pounds, again stated that he was not going to talk to anyone and then rammed his forearm into Burris, shoving him through the heavy double doors of the courthouse. As defendant pushed him, Burris grabbed defendant and they fell into the entranceway of the Broadway Street exit of the courthouse. Although he pointed his finger at defendant, Burris did not touch defendant until the defendant struck him and pushed him through the double doors at the courthouse entrance.
 
 
 12
 At that point, Burris informed defendant that he was under arrest. Defendant again rammed his forearm into Burris as he was attempting to handcuff him. Deputy Bodenhamer came to Burris' assistance, and together they were able to handcuff defendant.
 
 B.
 
 13
 On the same date, January 16, 1991, defendant Halliburton was charged by complaint with assault on a federal officer at the United States Courthouse in Nashville, Tennessee, in violation of 18 U.S.C. § 113(d). Thereafter, a bench trial was held before a magistrate judge on March 19, 1991. Defendant was found guilty and sentenced to the time served, 60 days, and two years unsupervised probation. The court further ordered, as a condition of probation, that defendant was barred from visiting or entering the United States Courthouse without the permission of the court.
 
 
 14
 On March 28, 1991, defendant filed a timely appeal to the district court. On appeal, the district court held that the detention of defendant constituted an unreasonable seizure in violation of the Fourth Amendment to the Constitution but that defendant's resistance to the detention utilized more force than was necessary to save his life or avert bodily harm. Consequently, the district court affirmed the magistrate judge's conviction of defendant. This timely appeal followed.
 
 II.
 
 15
 Defendant Halliburton argues that Officer Burris' conduct in attempting to stop and detain him was an unreasonable seizure pursuant to the Fourth Amendment. He further argues that his conduct in pushing Officer Burris through the double doors of the courthouse was a lawful exercise of his right to repel the unreasonable seizure committed by Officer Burris.
 
 A.
 
 16
 The first issue which must be addressed is whether Officer Burris' attempt to stop and detain defendant was an unreasonable seizure within the meaning of the Fourth Amendment. The district court found that Officer Burris' actions constituted a seizure because a reasonable person in defendant's position would not have felt free to leave and that the seizure was unreasonable because the intrusion on defendant's personal security outweighed the governmental interest in investigating an informal report of a minor, i.e., misdemeanor, offense.
 
 
 17
 The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. See United States v. Hensley, 469 U.S. 221, 226, 105 S.Ct. 675, 679 (1985). However, the Fourth Amendment does not proscribe all contact between the police and citizens. See, e.g., Immigration and Naturalization Service v. Delgado, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762 (1984). Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place. See United States v. Taylor, 956 F.2d 572, 575 (6th Cir.1992). Under existing precedent, a "seizure" occurs during a police-citizen encounter only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. See United States v. Mendenhall, 446 U.S. 544, 553-54, 100 S.Ct. 1870, 1877 (1980).
 
 
 18
 In this case, Officer Burris' actions constituted a seizure. When defendant returned to the first floor to pick up his duffel bag, Officer Burris told defendant that he wanted to speak to him. At that point, defendant refused to speak to Officer Burris, picked up his duffel bag, and began to leave the courthouse. Obviously at this point in time, in view of all the circumstances, defendant did not feel that he was not free to leave. However, the encounter between Officer Burris and defendant continued to the point where Officer Burris interposed himself between defendant and the exit from the courthouse, raised his voice, pointed his finger at defendant, and stated that he wanted to talk to defendant. At the point in time where Officer Burris physically blocked the exit of the courthouse, it cannot be said that in view of the totality of the circumstances a reasonable person would have believed that defendant was free to leave the courthouse. Therefore, when Officer Burris physically blocked the courthouse door, his attempt to stop and question defendant became a seizure within the meaning of the Fourth Amendment to the Constitution.
 
 B.
 
 19
 Having concluded that Officer Burris' actions were a "seizure" under the Fourth Amendment, the next issue is whether Officer Burris' "seizure" was "unreasonable" within the meaning of the Fourth Amendment. Whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person, and the Fourth Amendment requires that such seizure be "reasonable." See Brown v. Texas, 443 U.S. 47, 50, 99 S.Ct. 2637, 2640 (1979).
 
 
 20
 It is clear from the record that Officer Burris wished to stop and question defendant about the alleged incident that was said to have occurred some two weeks earlier in the district court clerk's office. If proved to have been true, defendant's actions during that incident would constitute indecent exposure under Tennessee law. See Tenn.Code Ann. § 39-13-511 (1991). Indecent exposure is a Class B misdemeanor in Tennessee and is punishable by a maximum of six months imprisonment or a $500.00 fine, or both. See Tenn.Code Ann. § 39-13-511 (1991) and § 40-35-111 (1991).
 
 
 21
 In Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883 (1968), the Supreme Court held that police officers may make an investigatory stop on less than probable cause, where they have a reasonable and articulable suspicion that the person stopped was about to commit a crime or was committing a crime at the moment of the stop. Subsequently, in United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675 (1985), the Court addressed the issue of a Terry stop of a person whom the police suspected had been involved in a completed crime. There, the Court held that if the police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a Terry stop may be made to investigate that suspicion. Id. 469 U.S. 229, 105 S.Ct. at 680.
 
 
 22
 In this case, Officer Burris did not have a reasonable suspicion that defendant had committed a felony in the district court clerk's office two weeks earlier. Rather, the crime which defendant allegedly committed in the clerk's office was a misdemeanor. The government argues, however, that Officer Burris had reasonable and articulable grounds to believe that defendant was committing a crime based upon his conduct in the I.R.S. office and while he was being escorted from the courthouse. However, nothing in the record supports this assertion. Officer Burris did not escort defendant from the I.R.S. office. Therefore, if defendant were committing a crime, someone other than Officer Burris would have had grounds for a Terry stop. Moreover, the I.R.S. employees asked that defendant be removed from their office based upon the amount of time he had spent completing an employment application. These facts would not give rise to a reasonable and articulable suspicion that a crime had been committed.
 
 
 23
 Thus, Officer Burris' "seizure" of defendant was "unreasonable" within the meaning of the Fourth Amendment. Officer Burris lacked grounds for a Terry stop of defendant because he lacked a reasonable and articulable suspicion that defendant was committing or was about to commit a crime or that defendant had committed a completed felony.
 
 C.
 
 24
 Defendant next argues that he was privileged to resist Officer Burris' unlawful seizure of his person, and, therefore, he did not violate section 113(d). Title 18 U.S.C. § 113(d), which proscribes: "[a]ssault by striking, beating, or wounding....," is the equivalent of a simple battery, and its violation requires neither a particular degree of severity in the injury nor that type of specific intent which characterizes any of the more serious offenses under section 113. See United States v. Guilbert, 692 F.2d 1340, 1344 (11th Cir.1982), cert. denied, 460 U.S. 1016 (1983); United States v. Knife, 592 F.2d 472, 482 (8th Cir.1979); United States v. Stewart, 568 F.2d 501, 504-05 (6th Cir.1978). In this case, defendant's ramming his forearm into Officer Burris with sufficient force to hurl him through the double doors at the courthouse entrance satisfies the elements of the offense of assault under section 113(d) unless defendant was privileged to use such force.
 
 
 25
 Defendant asserts that he was privileged to use such force and cites John Bad Elk v. United States, 177 U.S. 529, 20 S.Ct. 729 (1900). In that case, the Supreme Court held that where a police officer attempted an illegal arrest, the individual he attempted to arrest could resist the illegal arrest using no more force than was absolutely necessary to repel the assault constituting the attempt to arrest. Id., 177 U.S. 535, 20 S.Ct. 731. The principle enunciated in the John Bad Elk case remains valid but is much criticized. See United States v. Moore, 483 F.2d 1361, 1364 (9th Cir.1973), and United States v. Simon, 409 F.2d 474, 477 (7th Cir.), cert. denied, 396 U.S. 829 (1969).
 
 
 26
 Under John Bad Elk, a defendant can resist an unlawful arrest using only the amount of force absolutely necessary to repel the unlawful arrest. In this case, defendant utilized far more force than was reasonably necessary to repel Officer's Burris unlawful seizure. The facts are undisputed that Officer Burris stationed himself between plaintiff and the exit doors of the courthouse. Officer Burris also pointed at defendant and stated that he wanted to talk to him. However, Officer Burris did not touch the defendant until defendant struck him with such force as to ram him through the double exit doors of the courthouse. In using such force, defendant clearly exceeded the amount of force, if any, that he was entitled to use to repel the unreasonable seizure of his person. If defendant had merely attempted to push Officer Burris aside and exit the courthouse, a different conclusion might result.
 
 
 27
 Therefore, the district court correctly concluded that Officer Burris' action resulted in an unreasonable seizure. However, because defendant resisted such action with excessive force, he assaulted Officer Burris within the meaning of section 113(d).
 
 III.
 
 28
 For the reasons stated, the district court's order is AFFIRMED.