*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　　　Plaintiff-Appellee,

v

KENNETH MICHAEL NORDSTROM,

　　　　　　　Defendant-Appellant.

FOR PUBLICATION
May 26, 2026
9:43 AM

No. 375550
Oakland Circuit Court
LC No. 2024-290515-FH

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

RIORDAN, P.J. (*concurring in part and dissent in part*).

Defendant appeals by leave granted[1] the trial court's order denying his motion to dismiss and quash the felony information charging four felonies—resisting or obstructing a police officer causing serious impairment, MCL 750.81d(3); malicious destruction of police property, MCL 750.377b; resisting or obstructing a police officer, MCL 750.81d(1); and assaulting a medical technician, MCL 750.81d(1). On appeal, defendant asserts that the trial court erred by denying his motion because he could legally resist an unlawful arrest under *People v Moreno*, 491 Mich 38; 814 NW2d 624 (2012), which requires dismissing, at a minimum, the charge of resisting or obstructing a police officer under MCL 750.81d(1).

The majority agrees with defendant, concluding that his initial detention was unlawful under *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), and its progeny, thereby entitling him to resist that unlawful temporary detention. However, for the reasons set forth, I question whether a private citizen has the right to resist a temporary detention regardless of whether that detention satisfies the *Terry* standard. It seems that our appellate courts might be losing the plot by assuming, with little or no rigorous consideration, that such a right exists, to the clear detriment of public safety and those police officers charged with ensuring that safety.

---

[1] *People v Nordstrom*, unpublished order of the Court of Appeals, entered June 16, 2025 (Docket No. 375550).

-1-

In any event, I conclude that the officers' initial detention of defendant did satisfy the *Terry* standard, so the charge of resisting or obstructing a police officer under MCL 750.81d(1) should not be dismissed regardless of whether a *Terry* analysis governs this case. Accordingly, I would affirm the trial court in its entirety.[2]

## I. FACTS AND PROCEDURAL HISTORY

Police officers from the Wixom Police Department were dispatched to investigate an intoxicated male who, according to a 911 call, was harassing women and creating a public disturbance at an apartment complex. The officers arrived at the described location and approached defendant. Defendant matched the suspect's description given by the 911 caller, and he appeared intoxicated. However, he was not engaged in unlawful conduct at that time. After defendant identified himself following several requests to do so, the officers detained him for possibly disturbing the peace and to investigate further. As part of their investigation, officers planned to contact the 911 caller and ask for a written statement. At that point, defendant resisted the officers' attempts to detain him by twisting and turning, despite several orders to comply in the officers' attempt to place him in their patrol vehicle. At some point after the initial encounter, an officer spoke with the 911 caller and confirmed the original allegations made in the original phone call. Defendant was then arrested and transported to the police department for disturbing the peace, a 90-day misdemeanor.

After resisting being searched during booking, defendant was placed in a holding cell. Once the cell door closed, defendant produced money that he still possessed. The officers entered the cell to retrieve it, but defendant started another fight with the officers. During this encounter, defendant bit an officer's left hand and caused the officer to suffer a broken arm. Additionally, police equipment was broken. Finally, while being transported to the hospital for medical attention, defendant bit a paramedic's forearm.

The district court bound defendant over as charged despite defendant's argument that he lawfully resisted an unlawful arrest because his arrest for disturbing the peace, a 90-day misdemeanor, was committed outside the officers' presence. The district court found that defendant was lawfully detained during the officers' investigation and "things unraveled from there." In the trial court, defendant moved to dismiss and quash the felony information, arguing that the district court erroneously bound him over because he was entitled to resist an unlawful arrest. The prosecution responded that the arrest was lawful because it was objectively reasonable. At the motion hearing, the trial court denied the motion, finding that the arrest was objectively reasonable. Defendant filed an interlocutory application for leave to appeal, which this Court

---

[2] To be precise, while I disagree with the majority that the charge of resisting or obstructing a police officer under MCL 750.81d(1) should be dismissed, I agree with the majority that the remaining three charges should not be dismissed. Thus, I concur with the majority as to those three charges but dissent from the majority as to the charge of resisting or obstructing a police officer under MCL 750.81d(1).

granted. *People v Nordstrom*, unpublished order of the Court of Appeals, entered June 16, 2025 (Docket No. 375550).

## II. STANDARD OF REVIEW

"We review a trial court's decision on a motion to dismiss charges against a defendant for an abuse of discretion." *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012). "A trial court may be said to have abused its discretion only when its decision falls outside the range of principled outcomes." *Id.* This Court reviews questions of law de novo. *People v Norwood*, 303 Mich App 466, 469; 843 NW2d 775 (2013).

## III. DISCUSSION

The function of a preliminary examination is "to determine whether a felony was committed and whether there is probable cause to believe the defendant committed it." *People v Yost*, 468 Mich 122, 125-126; 659 NW2d 604 (2003). Evidence must be presented at the preliminary examination "from which at least an inference may be drawn establishing the elements of the crime charged . . . ." *Id.* at 126. Probable cause is "less rigorous than the guilt-beyond-a-reasonable-doubt standard of proof," and it only "requires a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Id.* (quotation marks and citation omitted). "The district court abuses its discretion by binding over a defendant when the prosecution has failed to present sufficient evidence to support each element of the charged offense." *People v Simon*, 339 Mich App 568, 580; 984 NW2d 800 (2021).

On appeal, defendant argues that the prosecution failed to sufficiently establish the elements of resisting or obstructing a police officer under MCL 750.81d(1), which is the charged offense arising from his refusal to submit to his initial temporary detention.[3] The elements of this offense are "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014) (quotation marks and citation omitted). Additionally, MCL 750.81d does not "modify the traditional common-law rule that a person may resist an unlawful arrest." *People v Moreno*, 491 Mich 38, 41; 814 NW2d 624 (2012). Thus, as a third element of resisting or obstructing a police officer under MCL 750.81d(1), the prosecution must prove that "the officers' actions were lawful." *Id.* at 51.

Defendant does not dispute that the prosecution established probable cause for the first two elements of resisting or obstructing a police officer, contrary to MCL 750.81d(1).[4] Rather,

---

[3] As the majority correctly notes, defendant "has abandoned any claim in this appeal that he is entitled to the dismissal" of the remaining three charges.

[4] As to the first element, testimony established that defendant resisted being detained despite several orders to remain still. As to the second element, defendant knew or had reason to know

-3-

defendant argues that the prosecution failed to establish the additional third element of the crime, i.e., that the officers acted lawfully when they initially detained him. In this regard, our Supreme Court held in *Moreno* that "MCL 750.81d [does not] abrogate[] the common-law right to resist illegal police conduct, including unlawful arrests and unlawful entries into constitutionally protected areas." *Moreno*, 491 Mich at 41. The Court reasoned that "[t]he prior resisting-arrest statute, MCL 750.479 as enacted by 1931 PA 328," did not preclude the common-law defense that a private citizen may resist an unlawful arrest, so the current version of MCL 750.81d similarly does not preclude that common-law defense. *Id.* at 49. Further, with regard to the scope of the common-law defense itself, the Court cited *People v Krum*, 374 Mich 356; 132 NW2d 69 (1965), *People v Clements*, 68 Mich 655; 36 NW 792 (1888), and *People v MacLeod*, 254 Mich App 222; 656 NW2d 844 (2002), for the proposition that "the right to resist *unlawful* arrests, and other *unlawful* invasions of private rights, is well established in our state's common law." *Id.* at 46-47.

The issue before us in the instant case, as framed by the prosecution and the majority, is whether the officers' initial temporary detention of defendant was justified under the principles articulated in *Terry*.[5] I question this framing of the issue. As explained, the holding in *Moreno* was that the Legislature, by enacting MCL 750.81d and its predecessor statute, did not "abrogate[] the common-law right to resist illegal police conduct, including unlawful arrests and unlawful entries into constitutionally protected areas." *Moreno*, 491 Mich at 41. And, *Moreno* apparently assessed the common law of our state as it existed in 1931, when the original predecessor statute to MCL 750.81d was enacted. See *id.* at 49. In other words, *Moreno* reasoned that the common law, as it existed in 1931, provided for a right to resist an unlawful arrest, and when the Legislature enacted the original resisting-arrest statute in 1931, it did not intend to abrogate that common-law right. See *id.* Thus, the common-law right to resist an unlawful arrest continued to remain effective throughout the subsequent amendments of that statute, including the most recent version before us today. *Id.* See also *People v Riddle*, 467 Mich 116, 126; 649 NW2d 30 (2002) ("[B]ecause our Legislature has not acted to change the law of self-defense since it enacted the first Penal Code in 1846, we are proscribed from expanding or contracting the defense as it existed at common law. We therefore apply the common law as it was understood when the crime of murder was codified to clarify the concepts of retreat and the castle doctrine.") (footnote omitted). Consequently, our task in this case arguably should be, consistent with *Moreno* and other cases such as *Riddle*, whether the common law in 1931 allowed a private citizen to resist an unlawful temporary detention or, in other words, a *Terry* stop. *Moreno* directs us to assess the early common

---

that the individuals engaging with him were police officers because both individuals were dressed in police uniforms.

[5] I agree with the majority that the officers could not lawfully arrest defendant for disturbing the peace when they initially encountered him because that offense did not occur in the officers' presence. See MCL 764.15(1)(d), MCL 750.170, and MCL 750.504. The closer question is whether the officers' lawfully detained defendant on a temporary basis under *Terry*, as the prosecution now argues.

law of our state with regard to the type of police conduct that occurred here to determine whether a private citizen had a common-law defense to resisting such conduct.[6]

I do not dispute, as *Moreno* explained, that the early common law of our state provided that a private citizen had a right to resist an unlawful arrest, i.e., a detention of an indefinite time, or an unlawful writ of garnishment. See *Krum*, 374 Mich at 361 ("While one may use such reasonable force as is necessary to prevent an illegal attachment and to resist an illegal arrest, the basis for such preventive or resistive action is the illegality of an officer's action, to which defendant immediately reacts.") (internal citations omitted). See also *John Bad Elk v United States*, 177 US 529, 534; 20 S Ct 729; 44 L Ed 874 (1900) ("At common law, if a party resisted arrest by an officer without warrant and who had no right to arrest him, and if in the course of that resistance the officer was killed, the offense of the party resisting arrest would be reduced from what would have been murder if the officer had had the right to arrest, to manslaughter.").[7] However, it is certainly debatable whether the common-law right to resist an unlawful arrest extended to the right to resist a temporary detention.

The seminal case regarding the common-law right to resist an unlawful arrest is *The Queen v Tooley*, 92 Eng Rep 349 (1710), in which the King's Bench recognized that right, characterizing an unlawful arrest as an attempt to "be imprisoned upon an unlawful authority." *Tooley*, 92 Eng Rep at 352. More recently, in *State v Valentine*, 132 Wash 2d 1; 935 P2d 1294 (1997), the Supreme Court of Washington examined *Tooley* in detail and explained its legal reasoning and basis:

> The important point to note is that *Tooley* is not about Mistress Anne Dekins's right to resist her unlawful arrest. It is about the right of others, strangers, to resist her unlawful arrest. The "provocation" the *Tooley* court spoke of was not the provocation of Mistress Dekins. It was the provocation of the three strangers at seeing someone unlawfully imprisoned, and whether that provocation provided sufficient reason to reduce their conviction from murder to manslaughter. Nevertheless, the *Tooley* rule has come down to us as a rule permitting an *arrestee* to use the necessary force (but no more) to resist an unlawful arrest.
>
> To understand why an unlawful arrest was such a great provocation as to affect "all people out of compassion," it is necessary to look at the historical evidence of the state of English prisons in the eighteenth century.
>
> . . . *English Prisons*. Professor Sam Bass Warner of Harvard Law School was instrumental in the 1940's in setting forth the historical background leading to the

---

[6] Another possible interpretation of *Moreno*, albeit less likely in my view, is that *Moreno* assessed the common law as it currently exists. However, as I am unaware of any modification of the common law with regard to resisting unlawful police conduct in recent decades, the analysis is the same.

[7] Moreover, while not directly mentioned by *Moreno*, our state's early common law also arguably provided that a private citizen had a right to resist unlawful police intrusions into the home. See *People v De Meaux*, 194 Mich 18, 28; 160 NW 634 (1916).

abandonment of the *Tooley* rule in the majority of states. "The *Tooley* rule developed when long imprisonment, often without the opportunity of bail, goal [sic] fever, physical torture, and other great dangers were to be apprehended from arrest, whether legal or illegal."

\* \* \*

. . . As one commentator put it, "Where imprisonment was often the equivalent of a death sentence, or at least, a living death, one can understand why men resisted unlawful arrest." One can also understand why, as the *Tooley* court said, an unlawful arrest was a great provocation affecting "all people out of compassion." The common law rule set out in *Tooley* plainly resulted from conditions that no longer exist. [*Id*. at 13-15 (cleaned up).]

Thus, as the Supreme Court of Washington explained, the primary basis, if not the exclusive basis, for the common-law rule regarding the right to resist an unlawful arrest was that a private citizen had a right to resist unlawful *imprisonment* in light of the deplorable conditions of English prisons and the absence of procedural mechanisms, such as bail and appointed counsel, that currently protect incarcerated individuals. See *id*. at 13-16.

Plainly, an unlawful temporary detention—what we now might refer to as an unlawful *Terry* stop, or something similar—is a far cry from the unlawful arrest contemplated by *Tooley*. Indeed, subsequent American cases such as *Bad Elk* typically use the term "arrest," not a broader term such as "detention." See, e.g., *Bad Elk*, 177 US at 534. Therefore, I have some doubt that our state's early common law provided any right to resist unlawful temporary detentions, notwithstanding that it did provide a right to resist unlawful arrests.[8]

---

[8] The Supreme Court of Virginia recognized the longstanding common-law rule that "a citizen generally is permitted to use reasonable force to resist an illegal arrest" but declined to extend that rule to an "illegal detention," stating that "the law of this Commonwealth, including the common law of England . . . does not provide a basis for recognizing a common law right to use force to resist an illegal detention. In the absence of authority requiring such a right, we perceive no reason for enlarging, by judicial decision, the scope of the common law on this subject." *Commonwealth v Hill*, 264 Va 541, 546; 570 SE2d 805 (2002). Similarly, the Supreme Court of Louisiana also declined to extend the common-law rule to "temporary detentions," reasoning that "[e]xtending the rule that a citizen may resist an unlawful arrest to an unlawful stop-and-frisk would belie the paramount purpose of ensuring officer safety by encouraging the use of force on police officers." *State v Sims*, 851 So2d 1039, 1046 (La, 2003), superseded by statute as stated in *State v Manuel*, 946 So2d 245 (La Ct App, 2006). The Supreme Court of Louisiana added that "[t]he courts of other states which continue to recognize a citizen's right to resist forcefully an unlawful arrest have arrived at similar conclusions." *Id*. at 1047.

Simply put, my research suggests that Michigan is an extreme outlier in treating the common-law right to resist unlawful arrests as necessarily including, with little to no reasoned analysis on the question, the right to resist unlawful temporary detentions, and by continuing to retain that right.

-6-

To be clear, it is not my intention to resolve that question today, as it has not been argued by the parties. Nor do I particularly fault the majority for immediately conducting a *Terry* analysis without assessing the early common law of our state, as such an approach is suggested by *People v Trapp*, 335 Mich App 141; 966 NW2d 420 (2020), and *People v Prude*, 513 Mich 377; 15 NW3d 249 (2024).[9] Indeed, I acknowledge that *Moreno* occasionally uses broad language to characterize its decision as going beyond unlawful arrests alone. See, e.g., *Moreno*, 491 Mich at 58 (stating that the Legislature did not "intend[] to abrogate the common-law right to resist unlawful arrests or other unlawful invasions of private rights"). Thus, post-*Moreno* cases may be correct to understand *Moreno* as broadly holding that *any* unlawful police conduct may be resisted under our state's early common law. However, as explained herein, I believe that this matter deserves far more careful consideration than has been given by our courts to date.[10]

In any event, turning to the question raised by the prosecution and addressed by the majority, assuming that a *Terry* analysis governs this case, I would conclude that the officers' temporary detention of defendant here satisfies *Terry*. "Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Pagano*, 507 Mich 26, 31-32; 967 NW2d 590 (2021). "Generally, seizures are reasonable for purposes of the Fourth Amendment only if based on probable cause." *People v Lewis*, 251 Mich App 58, 69; 649 NW2d 792 (2002) (citations omitted). However, under the Fourth Amendment, "a police officer may in appropriate circumstances and

---

[9] *Trapp*, in my view, correctly identified the proper analysis for these circumstances, stating that "*Terry* stops were unknown to the common law, of course. As *Moreno* instructs, the common law focused on 'invasions of privacy' rather than technical distinctions between arrests and other forms of seizure. . . . [T]he common-law right to resist the unlawful taking of one's *property* also encompasses the right to resist the unlawful taking of one's *liberty*." *Trapp*, 335 Mich App at 164-165. While I may not agree with *Trapp*'s ultimate conclusion that the common law provided for a right to resist unlawful temporary detentions, as its analysis of the early common law arguably was superficial, I readily agree with its framing of the issue.

*Prude*, in contrast, simply conducted a *Terry* analysis without any consideration of the common law whatsoever. Possibly, our Supreme Court did so because the parties did not dispute that a *Terry* analysis alone governed the case, see *id*. at 393, and the case was decided without the benefit of briefing or oral argument, see *id*. at 394 n 4 (VIVIANO, J., *dissenting*).

[10] If, as I suggest herein, there is no common-law right to resist an unlawful temporary detention, it follows that a defendant, such as the one before us, who resists an unlawful *Terry* stop is guilty, at least under a probable-cause standard, of violating MCL 750.81d(1). At that point, once the defendant resists, officers have probable cause to arrest the defendant for violating MCL 750.81d(1). In such circumstances, the arrest may only be characterized as "illegal" in an indirect, attenuated, or derivative sense. As the United States Court of Appeals for the Ninth Circuit has explained, "[w]e have been cited no authority, and have found none, that permits resistance to an arrest that is unlawful only in this derivative sense." *United States v Moore*, 483 F2d 1361, 1365 (CA 9, 1973) (upholding a conviction for assaulting a federal officer in the course of his official duties, 18 USC 111, where the arrest was the fruit of an unlawful search of the appellant's belongings).

in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry*, 392 US at 22. "Under this doctrine, if a police officer has a reasonable, articulable suspicion to believe a person has committed or is committing a crime given the totality of the circumstances, the officer may briefly stop that person for further investigation." *People v Barbarich*, 291 Mich App 468, 473; 807 NW2d 56 (2011). "Moreover, under *Terry*, a police officer may approach and temporarily detain a person for the purpose of investigating possible criminal behavior even if probable cause does not exist to arrest the person." *Id*. "When a court is called upon to determine whether a defendant's Fourth Amendment rights have been violated in the context of a *Terry* stop, it should view the totality of the circumstances in light of commonsense judgments and inferences about human behavior, and should be careful not to apply overly technical reviews of a police officer's assessment of whether criminal activity is afoot." *Id*. at 474 (citations omitted).

Here, the record shows that defendant was lawfully detained pursuant to *Terry* when officers attempted to temporarily place handcuffs on him and seat him in the patrol car. Both officers testified at the preliminary examination that defendant was detained essentially for disturbing the peace while they investigated the dispatch call they had received. Detaining a suspect with handcuffs does not automatically turn a *Terry* stop into a de facto arrest. See *People v Maggit*, 319 Mich App 675, 692; 903 NW2d 868 (2017). Similarly, "detention in a police cruiser does not automatically transform a *Terry* stop into an arrest." *Houston v Clark Co Sheriff Deputy John Does 1-5*, 174 F3d 809, 815 (CA 6, 1999).

More importantly, the record shows that this temporary detention was appropriate under the circumstances. Defendant was intoxicated, generally uncooperative, and had allegedly harassed women and engaged in overall disruptive conduct. These facts provided the officers with reasonable and articulable suspicion to detain defendant, pending an investigation into the dispatch. As to the nature of the detention, these facts also indicate defendant's possibly dangerous and unpredictable character, justified the officers' decision to handcuff and place defendant in the patrol car. Therefore, because the officers' detention was justified under the circumstances, once defendant physically interfered with this lawful detention, probable cause existed to arrest defendant for resisting or obstructing a police officer under MCL 750.81d, thus rendering the officers' arrest of defendant lawful. See *Moreno*, 491 Mich at 41.

Further, although the officers testified that defendant was arrested for disturbing the peace, an arrest is lawful even if the officers did not identify the correct legal basis for the arrest at the time. See *People v Cipriano*, 431 Mich 315, 342; 429 NW2d 781 (1988). So, notwithstanding that defendant did not commit an arrestable crime in the officers' presence before he resisted and obstructed the officers' orders, once he resisted the temporary detention, probable cause existed to justify his arrest. Therefore, even if the officers did not originally articulate the correct legal basis for the arrest, the arrest was legal, and the trial court's decision to deny defendant's motion was not erroneous or otherwise an abuse of discretion. By the same measure, the district court's decision to bind defendant over to the trial court was not erroneous or otherwise an abuse of discretion.

IV. CONCLUSION

It may or may not be the case that the common law of our state provided for, or currently provides for, the right to resist unlawful temporary detentions akin to those discussed in *Terry*. But, regardless of the answer to this question—one that I do not purport to reach today—I strongly suspect that we will find this answer in cases actually discussing the relevant common law, such as *Tooley* and *Bad Elk*, and not the modern Fourth Amendment caselaw considered by the majority here. I urge the bench and bar to appropriately consider this matter.

Regardless, assuming that a *Terry* analysis governs this case, I respectfully disagree with the majority that the officers' initial temporary detention of defendant did not satisfy *Terry*. Therefore, I would affirm the trial court in its entirety.

/s/ Michael J. Riordan