[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10578

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

VICTOR JAVIER GRANDIA GONZALEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20314-BB-1

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

WILSON, Circuit Judge:

This case requires us to determine whether the Fourth Amendment contains an in-the-presence requirement for a warrantless misdemeanor arrest. While many of our sister circuits answer this question in the negative, most make their conclusion in passing. Further, both the U.S. Supreme Court and our own circuit have explicitly declined to broach the issue. However, this case affords us with an opportunity to clarify a historically murky area of the law.

After review of common law, sister circuit, and Supreme Court precedent, we conclude that while an in-the-presence observation may be sufficient for a warrantless misdemeanor arrest, it is not necessary under the Fourth Amendment. In other words, an in-the-presence requirement for warrantless misdemeanor arrests is consistent with the Fourth Amendment, but not necessarily demanded as a prerequisite for constitutionality. We therefore affirm the district court's judgment.

## I.    Background

Around 5:00 a.m., police dispatch sent Officers Sanchez and Exantus to a residential neighborhood after a 911 complainant reported a "white male casing the area and traveling westbound." While Exantus went to speak with the complainant, Sanchez canvassed the neighborhood. About a half block away from the complainant's home, Officer Sanchez saw "a white male walking in the middle of the street" and told him to stop. This man was Defendant-Appellant Victor Grandia Gonzalez.

Sanchez approached Gonzalez.  He observed that Gonzalez wore dark clothing, carried a plastic bottle and a backpack, and had a shiny metal object in his pocket.  Sanchez asked Gonzalez if he lived in the area, to which Gonzalez replied he lived out of his car at a restaurant eight to ten blocks away.  When asked why he was walking down the street, Gonzalez responded that he thought he was allowed to do so.  Sanchez thought Gonzalez looked sweaty and nervous, and told him to calm down so the officer could "ask [Gonzalez] some basic questions."

Meanwhile, Exantus spoke with the 911 caller at the complainant's home.  He told Exantus that while his wife walked their dog, she saw a "Latin male" with a backpack in black clothes looking into mailboxes, concealing himself between cars,[1] and coming out of a neighbors' gate where the homeowners were away.  The neighbors had previously been burglarized.  After speaking with the complainant, Exantus was advised that Sanchez had located a suspect—Gonzalez—and he drove to meet Sanchez a couple streets down.

When Exantus arrived, he patted Gonzalez down and retrieved the shiny metal object from Gonzalez's pocket—scissors.

---

[1] The United States notes that the body-worn camera footage of the conversation lacks the mail and car concealment statements.  Rather, Exantus testified to these statements at an evidentiary hearing.  The United States speculates they may have come from the dispatch operator, and transcripts from the call are not in the record.  However, the district court found the complainant provided this information prior to arrest, and Gonzalez does not dispute these facts coming from the complainant.

Gonzalez told the officers he was walking because he couldn't sleep. Although Gonzalez left his physical identification in his car, he showed the officers a picture of his identification on his phone, which listed his home county as 30 minutes from the residential area.

Based upon both the complainant's report and officers' observations, Exantus arrested Gonzalez for loitering and prowling under Florida Statute § 856.021, a misdemeanor. Incident to his arrest, officers searched his backpack and found 37 pieces of sealed mail belonging to neighborhood residents. Gonzalez admitted he removed the mail from neighborhood mailboxes.

A federal grand jury charged Gonzalez with four counts of possessing stolen mail in violation of 18 U.S.C. § 1708. Gonzalez moved to suppress the mail evidence and statements as obtained in violation of the Fourth Amendment. Specifically, he argued that the Fourth Amendment prohibits a warrantless arrest for a misdemeanor unless committed in an officer's presence. Gonzalez alleged that because the officers only observed him walking down a street, the warrantless arrest for loitering and prowling under § 856.021 was unlawful and the subsequent search invalid.

The district court denied Gonzalez's motion to suppress from the bench, finding that the officers had probable cause to believe Gonzalez committed the misdemeanor offense of loitering and prowling. Notably, the court stated that the officers may take the complainant's observation to match Gonzalez's description for arrest purposes under § 856.021. Gonzalez pleaded guilty to one

count of possessing stolen mail in violation of 18 U.S.C. § 1708. In exchange, the government dismissed the remaining three counts. Gonzalez reserved his right to appeal the order denying his suppression motion, with the parties agreeing that the issue was dispositive of this case. The district court sentenced him to time served, followed by two years of supervised release.

Gonzalez timely appealed.

## II.    Standard of Review

Rulings on motions to suppress present mixed questions of law and fact. *United States v. Gonzalez-Zea*, 995 F.3d 1297, 1301 (11th Cir. 2021). We review "the district court's factual findings for clear error," its "application of the law to the facts *de novo*," and "construe the facts in the light most favorable to the party that prevailed below"—in this case, the government. *Id.* (quotation marks omitted).

## III.    Discussion

Gonzalez presents two arguments on appeal: (1) the Fourth Amendment limits warrantless misdemeanor arrests to those committed in an officer's presence; and (2) as a result, the officers lacked probable cause to arrest Gonzalez for loitering and prowling. We address each claim in turn.

### A.    *The Fourth Amendment's Requirements*

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Seizures include warrantless arrests. *Alston v. Swarbrick*, 954 F.3d 1312, 1318 (11th Cir. 2020). In

turn, warrantless arrests are "reasonable under the Fourth Amendment where there is probable cause," which "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). The question is whether, under the totality of the circumstances, "'a reasonable officer could conclude . . . that there was a substantial chance of criminal activity.'" *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018)).

Here, the parties debate the scope of this probable cause inquiry, specifically the circumstances officers may consider for a warrantless misdemeanor arrest. Gonzalez contends that the common law contains an "in-the-presence requirement," and the Fourth Amendment cannot be less protective than the common law. The government counters that the Fourth Amendment focuses on the reasonableness of the arrest in totem, and there is no sound basis to require an officer to personally witness all misdemeanor conduct.

To settle this debate, the Supreme Court provides guidance on where to begin our inquiry. Recently, the Court reaffirmed that the Fourth Amendment "must provide *at a minimum* the degree of protection it afforded when it was adopted." *Lange v. California*, 141 S. Ct. 2011, 2022 (2021) (quotation marks omitted). "We look to the statutes and common law of the founding era to determine the norms that the Fourth Amendment was meant to preserve." *Virginia v. Moore*, 553 U.S. 164, 168 (2008). If "history has not

provided a conclusive answer" to this question, we turn to "traditional standards of reasonableness" and analyze probable cause by balancing the private and public interests at play. *Id.* at 171.

Accordingly, we begin our analysis with the common law. Authorities long recognize a common law distinction between felony and misdemeanor arrest powers. These sources generally indicate that warrantless arrests for misdemeanors occur in narrower circumstances than warrantless arrests for felonies:

> In cases of a misdemeanor, a peace officer . . . has at common law no power of arresting without a warrant except when a breach of the peace has been committed in his presence or there is reasonable ground for supposing that a breach of peace is about to be committed or renewed in his presence.

9 Halsbury, *Laws of England* § 612, p. 299 (1909). Such formulations tend to suggest that an officer may conduct warrantless arrests for felonies committed outside of their presence, while misdemeanor arrests may not. *See, e.g.*, 1 Matthew Hale, *Pleas of the Crown* *587–90 (1736); 2 Matthew Hale, *Pleas of the Crown* *86–90 (1736); 4 William Blackstone, *Commentaries* *288–92 (1772). Since then, Fourth Amendment jurisprudence has wrestled with the contours of a common law dichotomy between felony and misdemeanor warrantless arrests, specifically in delineating when and to what extent a crime must be committed within an officer's presence to establish probable cause.

Precedent historically used stark language when drawing lines between these two standards. A string of Supreme Court cases dating back to the nineteenth century describe the "usual" common law rule as establishing that "a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony, and that he may *only* arrest without a warrant one guilty of a *misdemeanor* if committed in his *presence*." *Carroll v. United States*, 267 U.S. 132, 156–57 (1925) (emphasis added); *see also Kurtz v. Moffitt*, 115 U.S. 487, 498–99 (1885); *John Bad Elk v. United States*, 177 U.S. 529, 534–37 (1900); *United States v. Watson*, 423 U.S. 411, 418 (1976). Two former Fifth Circuit opinions[2] recognized the same: "a lawful arrest without a warrant, and a lawful search incident to such arrest, can be made *only* if a *misdemeanor* has been committed in the *presence* of the officer." *Grogan v. United States*, 261 F.2d 86, 87 (5th Cir. 1958) (emphasis added) (citing *Clay v. United States*, 239 F.2d 196 (5th Cir. 1956)). And at the Eleventh Circuit's outset, we stated that "the Fourth Amendment reflect[s] the ancient common law rule that a peace officer may make a warrantless arrest for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was reasonable ground for making the arrest." *Wilson v. Attaway*, 757 F.2d 1227, 1235 (11th Cir. 1985) (internal quotation marks omitted).

---

[2] Cases from the former Fifth Circuit are binding on this court when handed down prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

But since then, constitutional jurisprudence has retreated from this restrictive reading. Both the Supreme Court and this circuit have declined to explicitly decide whether the Fourth Amendment demands an in-the-presence requirement for warrantless misdemeanor arrests. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 340 n.11 (2001); *Knight v. Jacobson*, 300 F.3d 1272, 1276 n.3 (11th Cir. 2002). Further, the language employed by the Court softened from the limiting construction in *Carroll* to a general sufficiency standard. *See, e.g., Maryland v. Pringle*, 540 U.S. 366, 370 (2003) ("A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is *consistent with* the Fourth Amendment if the arrest is supported by probable cause." (emphasis added)). Even treatises synthesizing this development point out that the Court "has never held that a warrant for lesser offenses occurring out of the presence of an officer is constitutionally required." Wayne R. LaFave, 3 *Search & Seizure* § 5.1(b) (6th ed., Mar. 2024 update).[3]

Perhaps this is why every circuit to face this issue has "held that the Fourth Amendment does not include an in-the-presence requirement for warrantless misdemeanor arrests." *Knight*, 300 F.3d at 1276 n.3 (citing Fourth, Fifth, Sixth, and Ninth Circuit cases). Yet "no court has devoted much more than a line or two to

---

[3] LaFave continues that the *Atwater* Court "seems to go out of its way *not* to create the impression that new doubt has arisen regarding the ability of legislative bodies to move to an arrest standard for misdemeanors less demanding than the in-presence requirement." LaFave, 3 *Search & Seizure* § 5.1(b).

this issue." *Graves v. Mahoning Cnty.*, 821 F.3d 772, 778–79 (6th Cir. 2016) (citing First, Fourth, Fifth, Seventh, Eighth, Ninth, and Eleventh Circuit cases).   Our own research suggests that this trend stems from a Fourth Circuit case, where the court rejected the presence requirement because: (1) the Supreme Court never gave "constitutional force to this element of the common law rule"; (2) subsequent cases focused entirely on probable cause; (3) differences between misdemeanors and felonies were "no longer as significant as it was at common law"; and (4) such a requirement may be "impractical and illogical." *Street v. Surdyka*, 492 F.2d 368, 371–73 (4th Cir. 1974).   Nearly all circuits rely upon *Surdyka*'s foundations to find no presence requirement.[4]  And the Sixth Circuit's recent opinion in *Graves* outlines a compelling analysis for why we should join this consensus, pointing to common law exceptions that counsel against a per se in-the-presence requirement for warrantless misdemeanor arrests.  821 F.3d at 779.

Today, we join our sister circuits and hold that the Fourth Amendment does not require a misdemeanor to occur in an officer's presence to conduct a warrantless arrest.  Our conclusion rests on three grounds.

---

[4] Even the *Atwater* Court nodded to *Surdyka* in its refusal to address this issue. *See Atwater*, 532 U.S. at 340 n.11 (citing *Welsh v. Wisconsin*, 466 U.S. 740, 756 (1984) (White, J., dissenting) ("[T]he requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment." (citing *Surdyka*, 492 F.2d at 371–72))).

First, our reading of the common law lacks the per se rule that Gonzalez claims exists. Contrary to his arguments, the Supreme Court's historical descriptions of common law merely describe a "usual rule" that is "sometimes expressed," *Carroll*, 267 U.S. at 156–57, and none of the aforecited cases dealt with the issue at bar. Analyses of the common law instead yield that "statements about the common law of warrantless misdemeanor arrest simply are not uniform." *Atwater*, 532 U.S. at 329. Importantly, exceptions to any generalized presence requirement existed at common law. *See, e.g.*, 2 Hale, *Pleas of the Crown* *88–90 (permitting arrest upon information of certain incontinency crimes committed outside a constable's presence). Granted, the Supreme Court's common law descriptions undoubtedly provide that a presence requirement may be "consistent with" the common law. *Pringle*, 540 U.S. at 370. But even Supreme Court dicta may not be read for more than it is worth, particularly when that reading transforms said dicta into a wholesale Fourth Amendment criterion.

Second, our rejection of such a broad-based requirement accords with traditional standards of reasonableness. Fourth Amendment jurisprudence consistently emphasizes the need for administrability. *See Atwater*, 532 U.S. at 347; *see also Moore*, 553 U.S. at 174–75. In our view, the technicalities of distinguishing between misdemeanors and felonies appears impracticable in today's legal environment. Many misdemeanors involve conduct as violent and dangerous as felonies, or classifications turn on post-arrest determinations such as weight of seized contraband. Incorporating a presence requirement for misdemeanor arrests would likely

muddy the waters more than it would protect any additional privacy interests.

Finally, Fourth Amendment rights are properly protected absent a presence criterion. The "ultimate touchstone of the Fourth Amendment is reasonableness." *Lange*, 141 S. Ct. at 2017 (quotation marks omitted). The Supreme Court has long explained that the reasonableness of an arrest turns on probable cause, which involves a totality-of-the-circumstances inquiry that favors fluidity rather than categorical buckets. *See Wesby*, 583 U.S. at 56–57. As it stands, our probable cause doctrine provides an acceptable avenue for challenging the constitutionality of an arrest. Categorical exceptions based upon a crime's classification, however, do not fit within this legal framework.

In sum, although an officer's presence for a warrantless misdemeanor arrest is consistent with the Fourth Amendment, it is not necessarily demanded as a prerequisite for constitutionality. We find that the Fourth Amendment does not contain an in-the-presence requirement for all warrantless misdemeanor arrests.

## B.    *Probable Cause for Arrest*

With this conclusion in mind, we turn to an analysis of the officers' probable cause for arrest under Florida Statute § 856.021. Our question is whether, under the totality of the circumstances, "a reasonable officer could conclude . . . that there was a substantial chance" that Gonzalez was loitering and prowling. *Washington*, 25 F.4th at 902 (quotation marks omitted). It is a pragmatic approach, and we must avoid engaging "in an excessively technical

dissection of the factors supporting probable cause." *Wesby*, 583 U.S. at 60 (internal quotation marks omitted).

Section 856.021 criminalizes loitering and prowling as a misdemeanor offense. The Florida Supreme Court explained that the statute's constitutionality[5] is confined to "circumstances where peace and order are threatened or where the safety of persons or property is jeopardized." *State v. Ecker*, 311 So. 2d 104, 109 (Fla. 1975). The statute's unlawful conduct consists of a two-element inquiry: "'[1] to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, [2] under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.'" *Id.* at 106 (quoting Fla. Stat. § 856.021(1)). Florida courts have refined their interpretation post-*Ecker* and describe the statute as a prospective prevention tool. "The gist of [the first] element is aberrant and suspicious criminal conduct which comes close to, but falls short of," actual or attempted criminal activity. *D.A. v. State*, 471 So. 2d 147, 151 (Fla. Dist. Ct. App. 1985). As to the second element, justifiable alarm is warranted by conduct that "amount[s] to an imminent breach of the peace or an imminent threat to public safety." *Id.* at 152. Unless impracticable, the officer must provide an opportunity for the person to dispel the alarm. Fla. Stat. § 856.021(2).

---

[5] Section 856.021 was patterned after the Model Penal Code and enacted in response to *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972), which struck down the immediate predecessor of this present loitering statute. *See Ecker*, 311 So. 2d at 106–07.

Florida Statute § 901.15(1) permits warrantless arrests for misdemeanors "in the presence of [an] officer," with certain exceptions inapplicable to this case. However, § 856.031 also explains that an officer "may arrest any suspected loiterer or prowler without a warrant in case delay in procuring one would probably enable [the suspect] to escape arrest," which seemingly excepts the prowling statute from the § 901.15 presence requirement. Based upon this tension, the Florida courts disagree as to whether the prowling statute demands an in-the-presence requirement. *Compare State v. Cortez*, 705 So. 2d 676, 679 (Fla. Dist. Ct. App. 1998), *with P.R. v. State*, 97 So. 3d 980, 982–83 (Fla. Dist. Ct. App. 2012). Nonetheless, for purposes of the Fourth Amendment, an arrest may violate state law and remain constitutionally permissible "so long as it was supported by probable cause." *United States v. Goings*, 573 F.3d 1141, 1143 (11th Cir. 2009) (per curiam) (describing the Supreme Court's holding in *Moore*, 553 U.S. at 176–78).

In the present case, we find that the officers had sufficient probable cause to arrest Gonzalez for loitering and prowling under the totality of the circumstances. As a preliminary matter, we note that Gonzalez's arrest is suspect under Florida law—it appears that a warrantless misdemeanor arrest limits probable cause to in-the-presence observations.[6] Here, that means all the officers saw was a man walking down a neighborhood street in the early morning

---

[6] *See* Fla. Stat. § 901.15(1); *P.R.*, 97 So. 3d 982–83. Florida case law that says otherwise is in the minority. *See, e.g.*, *Cortez*, 705 So. 2d at 679. The majority of decisions find an in-the-presence requirement.

hours, about a half block away from the complainant's home. Even considering the officer's conversations with Gonzalez regarding his living situation, we are skeptical that these interactions give rise to ongoing or imminent criminal activity. *See D.A.*, 471 So. 2d at 151–52. Stripped of the complainant's observations, the officers likely lacked probable cause to arrest Gonzalez under Florida's prowling statute.

However, the *Moore* Court instructs that this violation does not necessarily make the arrest unconstitutional under the Fourth Amendment. 553 U.S. at 176–78. Without a Fourth Amendment in-the-presence requirement, we conduct a totality of the circumstances review of the facts known to the officers at the time of the arrest. The totality of the circumstances includes not only the officers' observations and conversations, but also the resident's contemporaneous complaint and Gonzalez's proximity to the resident's home. Taken together, there are sufficient facts that a "reasonable officer could conclude" there was a "substantial chance" Gonzalez prowled in a manner not usual for law-abiding citizens, and in doing so, raised reasonable alarm for the safety of persons or property in the vicinity. *Washington*, 25 F.4th at 902; Fla. Stat. § 856.021(1). When Gonzalez failed to dispel the officers' alarm with his identification and explanations, it is difficult to say that the officers couldn't reasonably conclude there was probable cause under the prowling statute. Fla. Stat. § 856.021(2).

Arguments to the contrary prove unavailing. In essence, Gonzalez attempts to break this probable cause inquiry down into

a series of "rigid rules, bright-line tests, and mechanistic inquiries" that we consistently reject for "a more flexible, all-things considered approach." *Florida v. Harris*, 568 U.S. 237, 244 (2013). Gonzalez's analysis falls precisely into the "excessively technical dissection of the factors" that our precedent forbids for probable cause purposes. *Wesby*, 583 U.S. at 60 (quotation marks omitted). For the reasons stated in Part III(A), *supra*, we decline to do so here.

As a result, we find that the officers had sufficient probable cause to arrest Gonzalez for loitering and prowling.[7]

## IV.    Conclusion

We hold that there is no in-the-presence requirement for warrantless misdemeanor arrests under the Fourth Amendment. Without such a requirement, the officers had probable cause to arrest Gonzalez for loitering and prowling under § 856.021. We therefore affirm the district court's judgment.

**AFFIRMED.**

---

[7] Because we find probable cause for arrest under Florida Statute § 856.021, we decline the government's invitation to address alternative grounds under Florida Statute § 810.09. *See Manners v. Cannella*, 891 F.3d 959, 969 (11th Cir. 2018).

23-10578        LUCK, J., concurring in the judgment                1

LUCK, Circuit Judge, concurring in the judgment:

Victor Grandia Gonzalez's argument that the district court erred in denying his suppression motion proceeds in three steps—two premises followed by a conclusion. Gonzalez's *first premise* is that the Fourth Amendment provides no less protection against unreasonable searches and seizures than the common law at the founding. His *second premise* is that, at the founding, the common law was clear that a police officer could not make a warrantless misdemeanor arrest if the crime was not committed in the officer's presence. Adding each premise together, Gonzalez concludes that, because he committed his misdemeanor loitering and prowling outside the presence of the Miami-Dade police officers who arrested him, the arrest (and the search incident to arrest that uncovered the stolen mail) violated the Fourth Amendment. But his conclusion adds up only if he's right about each premise. As Gonzales concedes, if either premise is wrong, his conclusion that the loitering-and-prowling arrest violated the Fourth Amendment is in trouble.

In my view, the district court properly denied Gonzalez's suppression motion, and the majority opinion properly affirms the denial, because Gonzalez's second premise is wrong. At the founding, the rule was not clear that an officer could not arrest a person who commits a misdemeanor if the crime was committed outside the officer's presence. And even if there was a clear-cut rule, it would not apply to this case because Gonzalez partially committed

2                LUCK, J., concurring in the judgment        23-10578

his loitering-and-prowling misdemeanor in the Miami-Dade police officers' presence.

## I.

Gonzalez's second premise is wrong because, at the founding, the common law rule for misdemeanor arrests was not as clearcut as Gonzalez contends. "[T]he common-law commentators (as well as the sparsely reported cases) reached divergent conclusions with respect to officers' warrantless misdemeanor arrest power." *Atwater v. City of Lago Vista*, 532 U.S. 318, 328 (2001). As Judge Sutton has explained, there are "sound arguments on each side." *Graves v. Mahoning Cnty.*, 821 F.3d 772, 780 (6th Cir. 2016).

On the one hand, "at least some of [the common-law commentators] spoke of the constable's great original and inherent authority with regard to arrests, which allowed them to arrest without a warrant for some misdemeanors committed outside their presence, including for some sexual crimes." *Id.* at 779 (cleaned up). Yet other commentators have said that the common law "prohibited an officer from making a warrantless arrest for a misdemeanor unless the crime was committed in his presence." *Id.* (quotation omitted, brackets removed). "The historical record," in other words, "does not reveal a limpid legal rule." *Lange v. California*, 141 S. Ct. 2011, 2022 (2021).

Pushing back, Gonzalez relies on dicta in *Kurtz v. Moffitt*, 115 U.S. 487 (1885), *John Bad Elk v. United States*, 177 U.S. 529 (1900), *Carroll v. United States*, 267 U.S. 132 (1925), *United States v. Watson*, 423 U.S. 411 (1976), and *Atwater* to support his conclusion that the

23-10578        LUCK, J., concurring in the judgment        3

common law clearly required an officer's presence during the commission of the crime for a warrantless misdemeanor arrest.[1] But the Supreme Court dicta runs both ways. As Justice White wrote, "the requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment." *Welsh v. Wisconsin*, 466 U.S. 740, 756 (1984) (White, J., dissenting) (citation omitted). And, indeed, as Justice Powell explained, "[t]here is no historical evidence that the Framers or proponents of the Fourth Amendment, outspokenly opposed to the infamous general warrants and writs of assistance, were at all concerned about warrantless arrests by local constables and other peace officers." *Watson*, 423 U.S. at 429 (Powell, J., concurring); *see also* Thomas Y. Davies, *Recovering the Original Fourth Amendment,* 98 MICH. L. REV. 547, 551 (1999) (explaining that "the Framers did not address warrantless intrusions at all in the Fourth Amendment or in the earlier state provisions").

The common-law sources the Supreme Court has relied on also do not yield a clear rule. In *Kurtz* and *Watson*, for example, the Supreme Court cited Lord Hale's treatise. *See* 115 U.S. at 498–99; 423 U.S. at 418–19. But Hale agreed there were misdemeanors in which a police officer could arrest a violator without a warrant where the misdemeanor was not committed in the officer's

---

[1] Even the dicta Gonzalez relies on is not so clear. In *Carroll*, for example (citing *Kurtz* and *John Bad Elk*), the Supreme Court acknowledged exceptions to the common law rule by calling the in-the-presence requirement "[t]he *usual* rule." *Carroll*, 267 U.S. at 156–57 (emphasis added).

presence. "[I]f there be an affray," for example, "tho to prevent it, or in the time of the affray the constable may upon information or complaint arrest the offender." 2 Matthew Hale, *Pleas of the Crown* ⋆90 (1736). And, "[i]f information be given to the constable, that a man and woman are in incontinency together, he may take the neighbours and arrest them, and commit them to prison to find sureties for the good behaviour." *Id.* at ⋆89.

Colonial and state laws before and shortly after the founding are consistent with Hale's view of the common law. Massachusetts's colonial laws, for example, provided that the "[c]onstable shall have full power . . . to apprehend without warrant such as are overtaken with drink, swearing, Sabbath breaking, Lying vagrant persons, [and] night-walkers, provided they be taken in the manner either by the sight of the [c]onstable, *or by present information from others*." *Colonial Laws of Massachusetts* 139 (1889) (1646 Act) (emphasis added). And New Jersey, in 1799, made it "the duty of every constable . . . to apprehend, without warrant or process, any disorderly person . . . and to take him or her before any justice of the peace of the county, where apprehended." *Digest of the Laws of New Jersey 1709–1838*, at 586 (Lucious Q.C. Elmer ed. 1838) (1799 Act). Surveying the different sources, the American Law Institute concluded that "[a]t common law there [was] a difference of opinion among authorities as to whether" the right of an officer to "arrest without a warrant extend[ed] to all misdemeanors." Am. Law Inst., *Code of Criminal Procedure*, Commentary to § 21, at 231 (1930).

23-10578        LUCK, J., concurring in the judgment        5

## II.

But even if there was no difference of opinion on the in-the-presence requirement, the common law rule would not apply to this case because the Miami-Dade police officers who arrested Gonzalez were present for part of his loitering-and-prowling misdemeanor. Responding to a 911 call, the officers found Gonzalez walking in the middle of the street in a residential neighborhood at 5:20 in the morning. He was wearing dark clothes and carrying a backpack. Gonzalez was nervous and sweaty and had to be calmed down. When asked, he did not explain what he was doing in the middle of the street before dawn. The officers found scissors in Gonzalez's waistband and his identification showed that he lived in another county thirty miles away. The officers arrested Gonzalez for loitering and prowling partly based on what they saw.

For that reason, Gonzalez's misdemeanor arrest does not run afoul of the common law rule that he presents to be clear. Gonzalez, quoting from *Kurtz*, describes the common law rule this way: "By the common law of England, neither a civil officer nor a private citizen had the right, without a warrant, to make an arrest for a crime not committed in his presence, except in the case of felony, and then only for the purpose of bringing the offender before a civil magistrate." 115 U.S. at 498–99. But Gonzalez's misdemeanor crime was, partly, committed in the officers' presence. So the rule does not apply. (Gonzalez has not even argued that it does apply to misdemeanor crimes that are partly committed in the officers' presence.)

Indeed, the common law evidence suggests that the in-the-presence requirement is met where officers are present for part of the misdemeanor crime. "According to the general rule recognized by numerous decisions, an offense is committed in the presence of the officer when he sees it with his eyes or sees some one or more of a series of continuous acts which constitute the offense, when it may be said the offense was committed in his presence." *State v. Lutz*, 101 S.E. 434, 439 (W. Va. 1919); *see also State v. Cook*, 399 P.2d 835, 839 (Kan. 1965) (same); *Halko v. State*, 175 A.2d 42, 47 (Del. 1961) (same); *Cowan v. Commonwealth*, 215 S.W.2d 989, 991 (Ky. Ct. App. 1948) (same); *Miles v. State*, 236 P. 907, 909 (Okla. Crim. App. 1925) (same). Here, consistent with the general rule, the officers arrested Gonzalez in the middle of loitering and prowling.

★   ★   ★   ★

Either way, Gonzalez's second premise is wrong. There was no clear-cut in-the-presence requirement for all misdemeanor arrests at common law. And even if there was, the common law rule would not apply to Gonzalez's loitering-and-prowling arrest because the crime was partly committed in the officers' presence. Where the common law is not clear—when the inquiry into the common law when the Fourth Amendment "was framed . . . yields no answer"—we "must evaluate the search or seizure under traditional standards of reasonableness." *Wyoming v. Houghton*, 526 U.S. 295, 299–300 (1999). I agree with the majority opinion, and the seven other circuit courts that have addressed this same Fourth Amendment issue, that Gonzalez's loitering-and-prowling arrest

23-10578        LUCK, J., concurring in the judgment                7

was reasonable under the Fourth Amendment.  So I too would affirm.