# SUPREME COURT OF THE UNITED STATES

### VICTOR JAVIER GRANDIA GONZALEZ *v.* UNITED STATES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 24–5577.   Decided February 24, 2025

The petition for a writ of certiorari is denied.

Statement of JUSTICE SOTOMAYOR, with whom JUSTICE GORSUCH joins, respecting the denial of certiorari.

Founding-era common law gave officers no authority to make an "arrest without a warrant, for a mere misdemeanor not committed in [their] presence." *Bad Elk* v. *United States,* 177 U. S. 529, 534–535 (1900) (collecting sources). This petition asks the Court to decide whether the Fourth Amendment incorporates that "in-the-presence" limitation on warrantless misdemeanor arrests. There is reason to think it might. After all, the in-the-presence requirement existed in some form at the founding. *Ibid.* This Court has often held, moreover, that the Fourth Amendment "'must provide *at a minimum* the degree of protection'" the common law afforded at the time of its adoption. *Lange* v. *California*, 594 U. S. 295, 309 (2021) (quoting *United States* v. *Jones*, 565 U. S. 400, 411 (2012)).

Important questions about the in-the-presence rule and its scope remain, and in this case they impede the Court's review of the question presented. In an appropriate case, however, the Court should grant review to consider whether and to what extent the Fourth Amendment incorporates the in-the-presence rule.

## I

On an early July morning, around 5 o'clock, two Miami Dade police officers encountered petitioner Victor Gonzalez

"'walking in the middle of the street'" in a residential neighborhood. 107 F. 4th 1304, 1306 (CA11 2024). The officers, who had received a 911 call reporting a "'white male casing the area,'" *ibid.*, engaged Gonzalez in brief conversation and arrested him for the Florida misdemeanor of "loitering and prowling," *id.*, at 1307; see Fla. Stat. Ann. §856.021 (2014). They performed a search incident to the arrest, which revealed several pieces of mail addressed to neighborhood residents. 107 F.4th, at 1307. A grand jury thereafter charged Gonzalez with possessing stolen mail, a federal felony. See 18 U. S. C. §1708.

Gonzalez moved to suppress the evidence against him, appealing to the in-the-presence rule. Because he did not commit any misdemeanor in the officers' presence, he argued, they lacked probable cause to arrest him, and thus to conduct the search. When the District Court rejected that argument, Gonzalez pleaded guilty but reserved his right to appeal.

The Eleventh Circuit affirmed. It acknowledged that the common law permitted warrantless arrests for misdemeanors "in narrower circumstances than warrantless arrests for felonies," because, unlike in the case of misdemeanors, "an officer [could] conduct warrantless arrests for felonies committed outside of their presence." 107 F. 4th, at 1308 (citing 1 M. Hale, History of the Pleas of the Crown 587–590 (1736); 2 *id.*, at 86–90; 4 W. Blackstone, Commentaries on the Laws of England 288–292 (1772)). The court nonetheless held that "the Fourth Amendment does not require a misdemeanor to occur in an officer's presence to conduct a warrantless arrest." 107 F. 4th, at 1310. As the Eleventh Circuit saw things, the Fourth Amendment does not incorporate the in-the-presence rule because (1) the rule was subject to exceptions at common law, (2) "the technicalities of distinguishing between misdemeanors and felonies appears impracticable in today's legal environment," and (3)

the Fourth Amendment is "properly protect[ive]" even "absent a presence criterion." *Ibid.*

## II
## A

"By the common law of England, neither a civil officer nor a private citizen had the right, without a warrant, to make an arrest for a crime not committed in his presence, except in the case of felony." *Kurtz* v. *Moffitt*, 115 U. S. 487, 498–499 (1885) (collecting authorities); see also *Bad Elk*, 177 U. S., at 534 (same). Instead, as Sir Matthew Hale summarized the rule, a warrantless arrest could be made only "[i]f an affray be made in the presence of a justice of peace, or if a felon be in his presence," and was prohibited "if there be only an affray . . . not in view of the constable." 1 History of the Pleas of the Crown, at 587; see also 4 Blackstone, Commentaries, at 289 (justice of the peace could arrest felons "upon probable suspicion," but could arrest for breach of the peace only if committed "in his presence"); W. Schroeder, Warrantless Misdemeanor Arrests and the Fourth Amendment, 58 Mo. L. Rev. 771, 787–789 (1993) (reviewing English jurisprudence establishing the in-the-presence rule).*

After the founding, American States continued to abide by the in-the-presence rule almost without exception. See, *e.g., id.*, at 847–848; 1 J. Archbold & T. Waterman, Criminal Procedure, Pleading and Evidence, in Indictable Cases 103–104 (7th ed. 1860) (summarizing state of the English common law and the law in the American States). Indeed, during the 19th and 20th centuries, state courts repeatedly

———————

*Some of these authorities can be read more narrowly as authorizing warrantless misdemeanor arrests only for breaches of the peace, but this Court declined to adopt that more limiting reading in *Atwater* v. *Lago Vista*, 532 U. S. 318 (2001) because of disagreement among common-law authorities.

reaffirmed the rule's continued vitality in the face of attempts to expand warrantless arrest powers. See, *e.g.*, *Commonwealth* v. *Carey*, 66 Mass. 246 (1853) ("A constable cannot, without a warrant, arrest a person guilty of a past offence, unless such offence amounts to a felony"); *In re Way*, 41 Mich. 299, 304, 1. N. W. 1021, 1024 (1879) ("An arrest without warrant has never been lawful except . . . in felony and in breaches of the peace committed in presence of the officer"); *In re Kellam*, 55 Kan. 700, 41 P. 960 (1895) (invalidating as unconstitutional a law permitting warrantless arrest on mere suspicion of misdemeanor); *Ex parte Rhodes*, 202 Ala. 68, 73, 79 So. 462, 467 (1918) ("[N]o municipal ordinance could authorize . . . or make . . . reasonable" warrantless arrest for a misdemeanor not committed in the presence); *Hughes* v. *State*, 145 Tenn. 544, 569, 238 S. W. 588, 595 (1922) ("An officer cannot lawfully arrest a person without a warrant . . . where the facts constituting the offense are incapable of being observed or are not observed by the officer"); *Orick* v. *State*, 140 Miss. 184, 200, 105 So. 465, 469 (1925) ("[T]he statement that an officer at common law could not arrest a person for a misdemeanor not committed in his presence without a warrant is sustained by the overwhelming weight of authority"). Today, most States continue to "hold to the view that a warrantless misdemeanor arrest may be made only for an offense committed 'in the presence'" of the arresting officer. 3 W. LaFave, Search and Seizure §5.1(c) (6th ed. 2024).

Florida, too, retains an in-the-presence rule. See Fla. Stat. Ann. §901.15(1) ("A law enforcement officer may arrest a person without a warrant when . . . [t]he person has committed a felony or misdemeanor or violated [an ordinance] in the presence of an officer"). Its loitering and prowling statute, however, provides that officers "may arrest any suspected loiterer or prowler without a warrant in case delay in procuring one would probably enable [the loi-

terer] to escape arrest." §856.031. That provision apparently allowed the officers here to arrest Gonzalez as a "suspected loiterer or prowler," *ibid.*, despite the fact that "all [they] saw was a man walking down a neighborhood street in the early morning," 107 F. 4th, at 1312.

## B

The Eleventh Circuit thought Gonzalez's arrest permissible because, in its view, the Fourth Amendment does not incorporate the in-the-presence rule in any form. There is a serious question about whether that categorical holding is consistent with this Court's precedent. To be sure, this Court left open "whether the Fourth Amendment entails an 'in the presence' requirement for purposes of misdemeanor arrests" in *Atwater* v. *Lago Vista*, 532 U. S. 318, 340, n. 11 (2001), where that question was not presented. Since then, however, the Court has several times said that the Fourth Amendment "'must provide *at a minimum* the degree of protection it afforded when it was adopted.'" *Lange*, 594 U. S., at 309 (quoting *Jones*, 565 U. S., at 441); *Torres* v. *Madrid*, 592 U. S. 306, 316–317 (2021) ("[o]ur precedent protects 'that degree of privacy against government that existed when the Fourth Amendment was adopted'") (quoting *Kyllo* v. *United States*, 533 U. S. 27, 34 (2001))); *Virginia* v. *Moore*, 553 U. S 164, 168 (2008) ("We look to the statutes and common law of the founding era to determine the norms that the Fourth Amendment was meant to preserve"). Precedent and historical evidence suggest, moreover, that the common law included at least some form of in-the-presence requirement for warrantless misdemeanor arrests. See *supra*, at 3–4. If that is right, it follows that the Fourth Amendment likely does as well. *Lange*, 594 U. S., at 309.

The federal and state courts have reached diverging conclusions about the continued vitality of the in-the-presence rule. As explained earlier, most States continue to abide by

the in-the-presence rule, see *supra*, at 4, and several state courts have continued to accord it constitutional weight. See, *e.g.*, *State* v. *Barton*, 669 S. W. 3d 661, 665 (Mo. 2023) (this Court's precedent leaves "no doubt" that the Fourth Amendment incorporates the in-the-presence requirement for warrantless misdemeanor arrests); *Pacheco* v. *State*, 465 Md. 311, 330–331, 214 A. 3d 505, 516–517 (2019) (reaffirming in-the-presence rule); *Ewing* v. *State*, 300 So. 2d 916, 919 (Miss. 1974) (similar); see also *State* v. *Ochoa*, 2008–NMSC–023, 143 N. M. 749, 182 P. 3d 130 (discussing scope of in-the-presence rule). By contrast, "every circuit to face [the] issue has held that the Fourth Amendment does not include an in-the-presence requirement for warrantless misdemeanor arrests." 107 F. 4th, at 1309 (internal quotation marks omitted).

As the Eleventh Circuit recognized, each Circuit to have considered the issue relied on *Street* v. *Surdyka*, 492 F. 2d 368 (1974), a case out of the Fourth Circuit that rejected the in-the-presence rule as "impractical and illogical." *Id.*, at 371–373. *Surdyka*, however, crucially rested on the premise that this Court had not given "constitutional force" to the common-law rule. *Id.*, at 371. That may have been true at the time. This Court's intervening decisions in *Kyllo*, *Madrid*, *Jones*, *Moore*, and *Lange* all say, however, that the Fourth Amendment must protect at minimum those rights recognized by the founding-era common law. Because the Fourth Circuit did not consider that possibility in *Surdyka*, it is unclear whether that decision remains good law today.

The Eleventh Circuit decision, too, failed adequately to address this Court's recent Fourth Amendment precedents. Two of its three reasons for rejecting Gonzalez's arguments relied on its independent assessment of reasonableness and practicality. 107 F. 4th, at 1310. For example, the Court simply asserted that "Fourth Amendment rights are properly protected absent a presence criterion." *Ibid.* Yet Fourth Amendment questions cannot be resolved simply by

asking whether, in the courts' view, a criterion is necessary to protect one's privacy interests. To be sure, courts today may have to confront questions about "how to apply the Fourth Amendment to a new phenomenon." *Carpenter* v. *United States*, 585 U. S. 296, 309 (2018). As explained, however, this Court has said that the Fourth Amendment must at minimum provide those protections that the common law guaranteed. *Lange*, 594 U. S., at 309.

In rejecting the in-the-presence rule altogether, the Eleventh Circuit also remarked that the misdemeanor-felony distinction has shifted dramatically since the founding. 107 F. 4th, at 1310. That is true, but it cuts in favor of Gonzalez, not against him. Even very serious crimes that are now felonies were misdemeanors at common law. "For example, all attempt crimes were only misdemeanors . . . as were assaults, batteries, woundings, and even kidnappings." T. Davies, Recovering the Original Fourth Amendment, 98 Mich. L. Rev. 547, 630, n. 220 (1999) (citing 4 W. Blackstone, Commentaries on the Laws of England 216 (1769)). In light of the modern expansion of the class of felony crimes, even a categorical in-the-presence rule would be substantially less protective than it was at the founding. That a majority of States retain the in-the-presence requirement for misdemeanor arrests, moreover, is in tension with the Eleventh Circuit's concern that "[i]ncorporating a presence requirement for misdemeanor arrests would likely muddy the waters more than it would protect any additional privacy interests." 107 F. 4th, at 1310.

C

The Eleventh Circuit correctly recognized that the in-the-presence requirement does not appear to have been absolute. *Ibid.* Most notably, "[f]rom the enactment of the Statute of Winchester in 1285, through its various readoptions and until its repeal in 1827, night watchmen were author-

ized and charged" to arrest suspicious "'nightwalkers.'" *At-water*, 532 U. S., at 333 (footnote omitted).

The degree to which that exception made it to the early American States is unclear, and it complicates Gonzalez's case. After all, the Florida statute at issue here arguably resembles the old nightwalker statutes. It makes it a misdemeanor for:

> "any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." Fla. Stat. Ann. §856.021(1).

Whether a warrantless arrest under such a provision is consistent with a historical "nightwalker" exception, and whether founding-era common law incorporated that exception, are difficult questions. On the one hand, English law permitted the arrest of "'any suspicious night-walker'" who could be detained "'till he give good account of himself.'" *Atwater*, 532 U. S., at 333. On the other, by the 19th century some American state courts had rejected as unlawful warrantless arrests even under circumstances where the nightwalker statutes might have permitted them. See, *e.g.*, *In re Way*, 41 Mich., at 301, 1 N. W., at 1021 (granting habeas relief to one arrested on suspicion of "loitering and rambling about . . . and not giving a good account of herself"); *In re Kellam*, 55 Kan., at 701, 41 P., at 961 (invalidating statute authorizing arrest of "'persons found under suspicious circumstances, who cannot give a good account of themselves'"); *Pinkerton* v. *Verberg*, 78 Mich. 573, 584–585, 44 N. W. 579, 583 (1889) (invalidating nighttime arrest of a woman found under circumstances raising a suspicion of prostitution who "failed to take account of herself").

Because it is an open question whether Gonzalez's arrest

falls within a historical exception to the in-the-presence requirement, this is an unsuitable case to consider the general rule. This case is complicated for another reason, too: the police may have had probable cause to arrest Gonzalez for felony trespass, and all agree that the in-the-presence rule does not apply to felonies. The petition nonetheless illustrates the need for percolation on the in-the-presence rule's scope. As some of the courts of appeal have recognized, it remains an open question whether and to what extent the Fourth Amendment incorporates the in-the-presence rule. See, *e.g.*, *Graves* v. *Mahoning*, 821 F. 3d 772, 780 (CA6 2016); *Gilmore* v. *City of Minneapolis*, 837 F. 3d 827, 834 (CA8 2016). This Court would benefit from further consideration of that question by the lower courts. In considering the issue, courts should give due regard to the full scope of the common-law rights now secured by the Fourth Amendment.