**NOT FOR PUBLICATION**

## In the

## United States Court of Appeals

### For the Eleventh Circuit

_____

No. 25-11949
Non-Argument Calendar
_____

LILLIE M. MIDDLEBROOKS,

*Plaintiff-Appellant,*

*versus*

SERGEANT SCOTT KASMAR,
   in his individual capacity, Rome, Georgia Police Department,
MAJOR CHRIS DEHART,
   in his individual capacity, Rome, Georgia Police Department,
PRIVATE FIRST CLASS CHRIS RIDLING,
   in his individual capacity, Rome, Georgia Police Department,
ASSISTANT CHIEF RODNEY BAILEY,
   in his individual capacity, Rome, Georgia Police Department,
CITY OF ROME, GEORGIA, et al.,

*Defendants-Appellees.*

―――――――――――――

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:24-cv-00039-WMR

―――――――――――――

Before JORDAN, KIDD, and ANDERSON, Circuit Judges.

PER CURIAM:

Lillie Middlebrooks, proceeding pro se, appeals the district court's order dismissing her amended complaint, which specified dismissal of her federal causes of action with prejudice and her state law causes of action without prejudice. She argues that the district court erred in dismissing her amended complaint because the police did not have probable cause to arrest her for criminal trespass and obstruction of a law enforcement officer where they provided an insufficient criminal trespass warning and did not personally witness her criminally trespass. She argues that she properly alleged sufficient facts for her Fourteenth Amendment equal protection claim, her Title VI claim of race discrimination, and her First Amendment retaliation claim. She also argues that the district court erred by declining to assume supplemental jurisdiction over her state law claims.

## I. DISCUSSION

*A. Probable Cause*

We review a district court ruling on a Rule 12(b)(6) motion de novo. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The complaint is viewed in the light most favorable to the plaintiff, and

all of the plaintiff's well-pleaded facts are accepted as true. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). Further, "[i]n the case of a pro se action . . . . the court should construe the complaint more liberally than it would formal pleadings drafted by lawyers." *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990) (italics omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and citations omitted, second alteration in original); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-82 (2009). We "may affirm the judgment of the district court on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012).

When resolving a motion to dismiss, a court may consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed and its authenticity is not challenged. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

To prevail on a civil rights action under 42 U.S.C. § 1983, a plaintiff must establish that she was deprived of a federal right by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42,

48 (1988).  A First Amendment claim may be the basis for a § 1983 claim, because "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  "[S]ection 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986).  "Specifically, [the retaliatory motive] must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019).  To state a viable First Amendment retaliation claim, the plaintiff must allege facts making it plausible that: (1) her speech was constitutionally protected, (2) the defendant's retaliatory conduct adversely affected the protected speech, and (3) there is a causal connection between retaliatory conduct and the protected speech. *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016).  A plaintiff alleging a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest.  *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1291 (11th Cir. 2019); *Nieves*, 587 U.S. at 401-02.

A demonstration "that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution." *Hartman*, 547 U.S. at 261.  On the other hand,

"establishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive." *Id.*

A claim for false arrest arises when an arrest occurs without a warrant and without probable cause. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). The existence of probable cause at the time of arrest serves as an absolute bar to a false arrest claim. *Id.* Similarly, a claim of false imprisonment, absent misidentification, depends on an absence of probable cause. *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009).

"Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir.1992). "Probable cause may exist based on the collective knowledge of law enforcement officials derived from reasonably trustworthy information." *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010). In deciding whether probable cause exists, police officers need not resolve every inconsistency found in the evidence, so long as it is reasonable to conclude from the totality of the circumstances that a crime was committed. *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019). Some conflicting evidence or a possible affirmative defense does not "necessarily vitiate probable cause." *Id.* As long as "it is reasonable to conclude from the body of evidence as a whole that a crime was committed, the pres-

ence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause." *Id.* In determining whether probable cause to arrest exists, an arresting officer must conduct a reasonable investigation. *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).

Under Georgia law, criminal trespass is a misdemeanor. O.C.G.A. § 16-7-21(d). Under Georgia state law, an arrest without a warrant is authorized if, among other things, the offense is committed in such officer's presence or within such officer's immediate knowledge. *Id.* § 17-4-20. We have held that the Fourth Amendment does not require a misdemeanor to occur in an officer's presence to conduct a warrantless arrest. *United States v. Gonzalez*, 107 F.4th 1304, 1310 (11th Cir. 2024). Thus, an arrest may not comply with state law requiring the officer's observation of the crime and remain constitutionally permissible under the Fourth Amendment so long as it was supported by probable cause. *Id.* at 1311. Without a Fourth Amendment in-the-presence requirement, the analysis is "a totality of the circumstances review of the facts known to the officers at the time of the arrest." *Id.* at 1312.

As an initial matter, the district court properly considered the body camera footage of the police officers because: (1) Sargeant Kasmar's and Officer Dehart's footage shows the officers arriving at the scene, speaking to witnesses, and placing Middlebrooks under arrest, which is central to Middlebrooks's claims of First Amendment retaliation, false arrest, and false imprisonment; and

(2) no one disputes the authenticity of the body camera footage. *Johnson*, 107 F.4th at 1300.

Here, the police officers had probable cause to arrest Middlebrooks for criminal trespass and obstruction of law enforcement. While Middlebrooks asserts that Georgia state law requires an officer to witness the misdemeanor for a lawful arrest, this Court's inquiry regarding probable cause is a totality of the circumstances analysis that includes review of the facts known to the officers at the time of Middlebrooks's arrest. *Gonzalez*, 107 F.4th at 1310-12. The police officers had probable cause to arrest Middlebrooks for criminal trespass because the officers spoke with witnesses who advised them that Middlebrooks had trespassed into the nursing home's property, the parking lot, and Sargeant Kasmar was able to confirm that she had been physically banned from the nursing home property. *Skop*, 485 F.3d at 1137; *Gonzalez*, 969 F.2d at 1002. Additionally, Middlebrooks stated to Sargeant Kasmar that she went over to the EMTs in the nursing home's parking lot. There was probable cause to prosecute Middlebrooks's obstruction of law enforcement charge because the body cam footage shows that she resisted placing her arms behind her back, sat on the ground, and refused to move to the police car. *Id.*

Although Middlebrooks argues that the criminal trespass warning previously provided by Officer Ridling was defective and asserts that Sargeant Kasmar did not personally witness her criminally trespassing, such defenses do not vitiate the probable cause finding given the totality of the circumstances. *Mulvey*, 915 F.3d at

1286.  Because the police officers had probable cause to arrest Middlebrooks, Middlebrooks's First Amendment retaliation, false arrest, and false imprisonment claims (Counts 1, 3, and 4) fail.  *Hartman*, 547 U.S. at 261; *Brown*, 608 F.3d at 734; *Case*, 555 F.3d at 1330.

## B. Equal Protection Claims

The Equal Protection Clause requires the government to treat similarly situated people in a similar manner.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Title VI prohibits discrimination on the basis of race, color, or national origin in all programs or activities receiving federal financial assistance.  42 U.S.C. § 2000d.  "[P]rivate individuals may sue to enforce [Title VI]," but "Title VI itself directly reaches only instances of intentional discrimination."  *Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001) (alteration adopted, quotation marks omitted).  In *Elston v. Talladega County Board of Education*, we noted that, where a plaintiff challenged defendants' actions under Title VI as well as the Equal Protection Clause and the Title VI regulations, we would not engage in a separate discussion of the Title VI statutory claims because "such an inquiry would duplicate exactly" the equal protection analysis.  997 F.2d 1394, 1405 & n.11 (11th Cir. 1993).  Moreover, we stated that Title VI provided no more protection than the Equal Protection Clause because both provisions barred only intentional discrimination.  *Id.*

Under 42 U.S.C. § 1983, no person acting under color of state law may deprive another of their rights under the Constitution.  42 U.S.C. § 1983.  "Person," as used in § 1983, includes municipalities

and local government entities. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality is liable under § 1983 if the plaintiff shows that: (1) her constitutional rights were violated; (2) the municipality had a custom or policy indicating deliberate indifference to the right; and (3) the policy or custom caused the violation. McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). The plaintiff must allege facts to show that a policy, practice, or custom was the moving force behind the constitutional violation. *Monell*, 436 U.S. at 694. A municipality may only be liable when an "official policy" causes the constitutional violation. *Id.* To show a policy or custom, it is generally necessary to establish a persistent and widespread practice. *Depew v. City of St. Mary's, Ga.*, 787 F. 2d 1496, 1499 (11th Cir. 1986). Particularly, the type of informal policy or custom that is actionable under § 1983 is the "continued failure of the city to prevent known constitutional violations by its police force." *Id.* Moreover, "[a] single incident of a constitutional violation is insufficient to prove a policy or custom." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011).

The plaintiff must prove the existence of such a policy, not through one incident, but by evidence of a "long-standing and widespread practice . . . deemed authorized by the policy-making officials because they must have known about it but failed to stop it." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). Moreover, as noted above, a plaintiff must identify the policy or custom that caused the deprivation of her constitutional rights. *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

A "municipality cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original). As we stated, a local governmental entity "does not incur § 1983 liability for injuries caused solely by its employees. Nor does the fact that a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee infer municipal culpability and causation." *McDowell*, 392 F.3d at 1289 (citation omitted).

Here, because Middlebrooks sued the City of Rome and Floyd County, she was required to prove municipal liability to prevail on her equal protection claims and Title VI claims of race discrimination. In other words, she needed to show: (1) that her constitutional rights were violated; (2) that the City of Rome and Floyd County had a custom or policy indicating deliberate indifference to those rights; and (3) that the policy or custom caused the violation of her rights. *McDowell*, 392 F.3d at 1289. Here, Middlebrooks did not satisfy prongs (2) or (3), because she did not identify a policy or custom which caused a deprivation of her rights. *Grech*, 335 F.3d at 1329. Therefore, we affirm the district court on this issue.

## C. Claims Against Chaffer

To state a viable First Amendment retaliation claim, the plaintiff must allege facts making it plausible that: (1) her speech was constitutionally protected, (2) the defendant's retaliatory conduct adversely affected the protected speech, and (3) there is a causal connection between retaliatory conduct and the protected

speech. *Bailey*, 843 F.3d at 480. Under the third prong, a plaintiff must allege facts to support a plausible finding that his protected speech was a motivating factor behind the harm. *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008).

Here, Middlebrooks does not allege sufficient facts regarding the third prong. Middlebrooks cannot demonstrate that the alleged retaliatory motive is the but-for cause of Chaffer's denial of her requests for black police officers and other emergency responders to the scene because there were no black police officers available and an ambulance had already been dispatched. *Nieves*, 587 U.S. at 399.

### D. Supplemental Jurisdiction

"[D]istrict courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3). District courts retain broad discretion in dealing with supplemental jurisdiction, and "considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion." *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 866 (11th Cir. 2022) (quotation marks omitted).

The district court did not err in declining to exercise supplemental jurisdiction over Middlebrooks's remaining claims of false

imprisonment, battery, and intentional infliction of emotional distress under state law because it had properly dismissed her claims over which it had federal question jurisdiction. *Silas*, 55 F.4th at 866; *see* U.S.C. § 1367(c).

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**